In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-11-00593-CV

_____


IN RE COMMITMENT OF SETH HILL

On Appeal from the 435th District Court
Montgomery County, Texas
Trial Cause No. 08-01-00790 CV

MEMORANDUM OPINION

The State of Texas petitioned for Seth Hill's commitment after it received a psychologist's report that Hill is a sexually violent predator. *See* Tex. Health & Safety Code Ann. §§ 841.001-.151 (West 2010 & Supp. 2012) (SVP Statute). Following a trial, a jury found that Hill suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. The trial court rendered a final judgment and an order of civil commitment. On appeal, Hill raises 14 issues challenging the judgment. We find Hill's issues are without merit and affirm the trial court's judgment.

1

# I.    Admissibility of Testimony

The State designated three experts to testify at trial: A.P. Merrillat, a fingerprint analyst; Dr. Timothy Proctor, a board-certified forensic psychologist and a licensed sex offender treatment provider; and Dr. Michael R. Arambula, a board-certified forensic psychiatrist.  Hill designated Dr. John Tennison, who is a licensed psychiatrist.  Hill raises issues related to each expert's testimony, as well as issues related to his own testimony. We address the issues as they correspond to each witness below.

## A. Testimony of A.P. Merrillat

In issue one, Hill argues that the trial court erred in refusing to allow him to cross-examine the State's fingerprint expert, A.P. Merrillat, on the prison conditions Merrillat observed while working for the Special Prosecution Unit investigating crimes that occur within prisons. The State called Hill as its first witness and questioned him extensively regarding his sexual activity and numerous sexual misconducts during his term of imprisonment.  In an attempt to rebut this evidence, Hill's counsel attempted to cross-examine Merrillat "about conditions that [Hill] would have faced inside the prison system, his access to various temptations, stressors, triggers[.]" The State objected and argued that this testimony was not relevant, and that Merrillat was only designated as a fingerprint

expert. The trial court ruled that Hill's counsel could ask foundational questions as to whether Merrillat had dealings with Hill personally, and if so, Merrillat could testify as to the things he personally witnessed. The trial court allowed counsel to pursue the matter with Merrillat in an offer of proof.

In the offer of proof, Merrillat testified generally regarding the availability of drugs and alcohol in prison, as well as the types of sexual activities that occur in the prison environment. He testified that it is a violation of prison policy for inmates to engage in sexual activity. He agreed that the disciplinary process in prison is dependent on guards making allegations, which are sometimes untrue or exaggerated. He also testified that inmates make false accusations. At the conclusion of Hill's offer, the trial court sustained the State's objection.

We review the trial court's determination to exclude Merrillat's proffered testimony for an abuse of discretion. *Osbourn v. State*, 92 S.W.3d 531, 537-38 (Tex. Crim. App. 2002). Rule 701 of the Texas Rules of Evidence provide the guidelines for opinion testimony by lay witnesses. Tex. R. Evid. 701. It requires opinion testimony to be rationally based on the witness's perception and helpful to a clear understanding of the witness's testimony or the determination of a fact in issue. *Id*. "Both lay and expert witnesses can offer opinion testimony." *Osbourn*, 92 S.W.3d at 535. "A person with specialized knowledge may testify about his or

her own observations under Rule 701 and may also testify about the theories, facts and data used in his or her area of expertise under Rule 702." *Id.* at 536. An expert may provide testimony under Rule 701 "'if the witness's testimony and opinion are based upon firsthand knowledge.'" *Id.* at 536 (quoting Texas Rules of Evidence Manual art. VII-6-7 (6th ed. 2002)).

The trial judge ruled that Merrillat's testimony regarding the prison environment and the propensity of false allegations of crimes and other violations committed therein, were not based on Merrillat's personal knowledge, but rather were based on hearsay. Because Merrillat's observations about the types of activities that occur in the prison environment are not based on a scientific theory, his testimony is admissible only as a lay opinion, if it meets the requirements of Rule 701. If Merrillat perceived the events and then formed an opinion that a reasonable person could draw from the facts, the first part of Rule 701 is satisfied. *See* Tex. R. Evid. 701.

It is not entirely clear from Merrillat's testimony or the offer of proof whether he personally perceived the events forming the basis of his opinions, or whether he obtained information regarding the events second hand. Regardless, what is clear is that Merrillat's testimony did not relate specifically to the prisons in which Hill had been incarcerated. Therefore, Merrillat's testimony does not

4

meet this requirement of Rule 701. Moreover, the same testimony defense counsel sought to elicit from Merrillat regarding the prison conditions, defense counsel was able to ask without objection of Dr. Proctor, therefore any error would be harmless. *See* Tex. R. App. P. 44.1(a). Finding no abuse of discretion, we overrule this issue.

B. Testimony of Dr. Thomas Proctor

In two issues, Hill claims the trial court abused its discretion in denying him the right to fully cross-examine Proctor. In his second issue, Hill claims that he was denied the right to cross-examine Proctor regarding his understanding of the law as it informs his opinion that Hill suffers from a behavioral abnormality. In his fourth issue, Hill argues the trial court denied him the right to cross-examine Proctor on the rate of error for his methodology in determining whether a person is likely to sexually recidivate.

Rule 702 of the Texas Rules of Evidence provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." Tex. R. Evid. 702. An expert may base his or her opinions or inferences on facts or data that are of a type reasonably relied upon by experts in the particular field. Tex. R. Evid. 703. An expert may be required to

5

disclose on cross-examination the underlying facts or data that support his or her opinions or inferences in a case. Tex. R. Evid. 705(a). The trial court has discretion to restrict cross-examination to matters shown to be relevant, as well as to avoid the needless consumption of time. *See* Tex. R. Evid. 611(a)(1)(2), (b).

1. Cross-Examination Regarding the SVP Statute and Case Law

Hill's counsel sought to specifically question Proctor about his understanding and familiarity with the SVP statute and the case law applying the statute. Hill's purpose in pursuing this line of questioning appears to be to determine the extent to which Proctor's understanding of the SVP statute and case law formed the basis of his opinions in this case. In his second issue, Hill argues the trial court abused its discretion when it failed to allow him to question Proctor on the court of appeals' opinions interpreting the statute.

Proctor testified that he is familiar with the definition of behavioral abnormality as the term is used in Texas law. He further explained:

> [A] behavioral abnormality is not a medical term or a psychological or psychiatric term. It doesn't come out of our books as mental health professionals or health care professionals. It is something that is defined in the Health and Safety Code, which is part of the law in Texas. And it is defined as a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes a person to [] commit a sexually violent act to the extent that they become a menace to the health and safety of another person.

6

Essentially, a person with a behavioral abnormality places or potentially places other people's health and safety at a significant risk. Proctor testified that a "[p]redatory act is also defined within the Health and Safety Code as an act directed toward individuals, including family members, for the primary purpose of victimization." *See* Tex. Health & Safety Code Ann. §841.002(5).

Proctor testified that in formulating his determination that Hill had a behavioral abnormality, he considered the SVP statute. He testified that he believed that someone who meets the statutory definition of having a behavioral abnormality would typically be different from the routine sex offender. Proctor fully explained his methodology. Proctor explained that to him the word likely means "probable . . . something . . . beyond a mere possibility or potential for harm."

Hill later made an offer of proof with Proctor regarding those questions the trial court refused to allow him to ask concerning specific appellate court opinions. However, Proctor's answer to each question he was asked during the offer of proof indicated that he did not know the details related to those court opinions. The offer of proof does not provide us with "what was expected to be proved by those answers." *See In re Commitment of Day*, 342 S.W.3d 193, 199-200 (Tex. App.—Beaumont 2011, pet. denied). Hill's offer of proof does not persuade us that the

7

information he sought to develop before the jury was significant to Proctor's opinions on the dispositive issue of whether Hill has a behavioral abnormality and is likely to reoffend. Proctor fully explained the bases for his opinion that Hill has a behavioral abnormality that makes him likely to commit a predatory act of sexual violence. The questions Hill was not allowed to ask do not address a fact of consequence that would have made Proctor's prognosis more or less probable. *See generally* Tex. R. Evid. 401 ("'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."); Tex. R. Evid. 402 ("Evidence which is not relevant is inadmissible."). Therefore, we conclude the trial court did not abuse its discretion and overrule issue two as it concerns the testimony of Proctor.

2. Cross-Examination Regarding Rate of Error

In issue four, Hill argues that the trial court abused its discretion when it denied him the right to cross-examine Proctor on the rate of error for his methodology in determining whether a person is likely to sexually recidivate. Hill's counsel did not make an offer of proof or identify what evidence he would have offered. Preservation of a complaint is a prerequisite for appellate review. Tex. R. App. P. 33.1(a). Error may be predicated on a ruling that excludes a party's

8

evidence only if the substance of the evidence was made known to the court by offer. Tex. R. Evid. 103(a)(2); *Ludlow v. DeBerry*, 959 S.W.2d 265, 269-70 (Tex. App.—Houston [14th Dist.] 1997, no writ). Without an offer of proof, we are unable to determine whether the trial court's exclusion of this testimony was erroneous and harmful. *See* Tex. R. App. P. 44.1(a); *see also Bobbora v. Unitrin Ins. Servs.*, 255 S.W.3d 331, 335 (Tex. App.—Dallas 2008, no pet.). Because Hill has failed to make an offer of proof regarding Proctor's rate of error, his complaint has been waived.

## C. Testimony of Dr. Michael Arambula

Hill raises a number of challenges related to Arambula's testimony. In his seventh issue, Hill challenges the reliability of Arambula's testimony. In Hill's second, third, fourth, fifth and sixth issues, he argues that the trial court abused its discretion when it denied him the right to fully cross-examine Arambula.

### 1. Motion to Strike Arambula's Testimony

In his seventh issue, Hill challenges the trial court's denial of his motion to strike the testimony of Arambula. Hill moved to strike Arambula's testimony because "he testified that it is not possible for a person to have a behavior[al] abnormality without being likely to engage in a predatory act of sexual violence" and that "behavior[al] abnormality and likelihood to reoffend are not separate

issues in the Health & Safety Code." Hill's counsel argued that these "two things establish that [Arambula] does not understand the statute and, therefore, his opinions are unreliable." The trial court overruled Hill's request.

Arambula testified that an evaluation to determine the presence of a behavioral abnormality is a sexual dangerousness evaluation. He explained that he looks at a "multitude of records . . . from which [he] determine[s] whether someone has a mental condition that poses sexual dangerousness to the community." He looks at risk factors that are present within the records he reviews and his interview of the person, and then determines whether the individual is "significantly sexually dangerous to meet the definition of behavioral abnormality." Arambula uses the statutory definition of behavioral abnormality in conducting his assessments. He diagnosed Hill with paraphilia, not otherwise specified with features of sadism and exhibitionism; polysubstance abuse in remission; and personality disorder, not otherwise specified with antisocial features. He explained that Hill's paraphilia NOS diagnosis was significant in his assessment of Hill because it is a deviant sexual condition, at the core of which is sexual dangerousness. He explained that Hill's polysubstance condition combines badly with paraphilia NOS because substance abuse impairs a person's judgment.

Arambula testified that in his opinion, Hill has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence.

Hill argues that the trial court should have stricken Arambula's testimony because Arambula misunderstands the SVP statute. Hill advocates for an interpretation of the statute that the Texas Supreme Court expressly rejected in *In re Commitment of Bohannan*, No. 10-0605, 2012 WL 3800317 (Tex. Aug. 31, 2012) (not yet released for publication). Hill argues that Arambula's testimony is not reliable because "Arambula improperly conflated the 'behavioral abnormality' and 'propensity' inquiries into one[.]" However, in *Bohannan*, the Supreme Court concluded that "whether a person 'suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence' is a single, unified issue." *Bohannan*, 2012 WL 3800317 at *5 (footnote omitted).

During its closing argument, the State argued to the jury that this case was about whether "Hill suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence[]" and the State defined "behavioral abnormality" as it is written in the statute. Additionally, the definition of "behavioral abnormality" and "predatory act" contained in the trial court's charge to the jury tracked the SVP statute. *See* Tex. Health & Safety Code Ann. § 841.002(2), (5). The jury charge is consistent with the Supreme Court's ruling in

11

*Bohannan* and we presume the jury followed the trial court's instructions. *See Bohannan*, 2012 WL 3800317, at *4-5; *see also Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 771 (Tex. 2003). We conclude the trial court did not err in denying Hill's motion to strike Arambula's testimony and overrule issue seven.

2. Cross-Examination Regarding the SVP Statute and Case Law

In his second issue, Hill argues that he was denied the right to cross-examine Arambula regarding his understanding of the SVP statute as it informs his opinion that Hill suffers from a behavioral abnormality. Hill's counsel specifically sought to question Arambula regarding his understanding of the opinions that the courts of appeals have written concerning the SVP statute. The trial court ruled this testimony was inadmissible.

Arambula testified that he was familiar with the law governing sexually violent predators. He explained that he understands the rulings made by the courts of appeals as a doctor, but not as an attorney. He agreed with Hill's counsel that it was important for him to understand the relevant statutes and court rulings so he would know when he needed the assistance of an attorney for a better understanding. Arambula testified that he understands "behavioral abnormality" as:

> essentially a sexual dangerousness evaluation where it is [his] job to accumulate information and determine if somebody has a mental condition which makes them sexually dangerous, and then to further collect more information about their history and look at risk factors

12

that have emerged from research in the literature. And then overall to determine whether that person is significantly dangerous to commit another sexually violent act.

He explained that behavioral abnormality is not a medical term or diagnosis, but a legal term. He testified that using his medical expertise, he translates his clinical findings into the statutory definition of behavioral abnormality. He stated that he stays up-to-date on the standards for behavioral abnormality evaluations by looking at some Texas case law. He described the process he generally uses in evaluating individuals for a behavioral abnormality, and specifically explained what he considered in determining Hill had a behavioral abnormality.

Hill's counsel failed to make an offer of proof with Arambula on this issue. The State argues that Hill did not preserve this issue for review. Hill responds that he did not need to make an offer of proof to preserve error because the substance of the testimony he sought was apparent from the context of his questions.

Error may not be based on a ruling that excludes evidence unless, "the substance of the evidence was made known to the court by offer, or was apparent from the context within which questions were asked." Tex. R. Evid. 103(a)(2); Tex. R. App. P. 33.1(a)(1). "To preserve error concerning the exclusion of evidence, the complaining party must actually offer the evidence and secure an adverse ruling from the court." *Perez v. Lopez*, 74 S.W.3d 60, 66 (Tex. App.—El

13

Paso 2002, no pet.). An appellate court may be able to "discern from the record the nature of the evidence and the propriety of the trial court's ruling," but without an offer of proof, the reviewing court cannot determine whether exclusion of the evidence was harmful. *Id*. Hill's counsel did not make an offer of proof with Arambula regarding this issue, nor did he identify the answers he expected to receive from Arambula. Without an offer of proof, we cannot determine whether the trial court excluded relevant examination or whether the exclusion of the evidence was harmful. *See id.*

3. Cross-Examination Regarding Hill's Sex-Offender Treatment

In his third issue, Hill argues that the trial court abused its discretion and committed reversible error when it excluded testimony from Arambula regarding Hill's sex-offender treatment. The State argues that Hill failed to preserve error for review of this issue by failing to make an offer of proof showing how Arambula would have answered the proffered questions.

Hill's counsel sought to ask Arambula whether he knew if Hill had spoken to Dr. Edd about continuing treatment in the event Hill was no longer compelled to be in mandatory treatment. The trial court sustained the State's relevance objection to these questions. Without an offer of proof, we cannot determine whether the exclusion of the evidence was harmful. *See id.*

4. Cross-Examination Regarding Rate of Error

In issue four, Hill argues that the trial court abused its discretion when it denied him the right to cross-examine Arambula on the rate of error for his methodology in determining whether a person is likely to sexually recidivate. Hill made an offer of proof.

Hill made an offer of proof during which he questioned Arambula about statistics published on a website regarding the rate of recidivism of those individuals civilly committed as a sexually violent predators. Arambula testified that he would not be surprised if the statistics indicated that no person in the State of Texas who has been judicially determined to be a sexually violent predator has engaged in a predatory act of sexual violence after commitment. Arambula explained that this is possible because of the structured environment that those committed are required to reside in as part of their continued treatment. At the conclusion of the offer of proof, the trial court sustained the State's objections.

We review the exclusion of expert testimony for an abuse of discretion. *Day*, 342 S.W.3d at 218 (citing *K-mart Corp. v. Honeycutt*, 24 S.W.3d 357, 360 (Tex. 2000)). A trial court abuses its discretion by excluding expert testimony that is relevant to the issues in the case and is based on a reliable foundation. *State v. Cent. Expressway Sign Assocs.*, 302 S.W.3d 866, 870 (Tex. 2009). The trial court's

erroneous exclusion of evidence constitutes reversible error when the complaining party shows that the trial court committed error and the error probably caused the rendition of an improper judgment. *Id*.; *see also* Tex. R. App. P. 44.1(a). "[T]he exclusion or admission [of evidence] is likely harmless if the evidence was cumulative, or the rest of the evidence was so one-sided that the error likely made no difference in the judgment." *Id*.

We conclude that the proffered testimony was relevant, but that it goes to the weight to be given Arambula's opinion and not to the admissibility of his testimony. However, Hill has not shown that such error was harmful. Arambula testified regarding his training, experience and credentials. He testified that his methodology in evaluating Hill was in accordance with his training and experience as a psychiatrist and is the accepted method for conducting a behavioral abnormality assessment in his field. Arambula testified that the records he reviewed in this case are typically relied on by experts in his field for conducting this type of assessment. While Hill proffered the post-commitment statistics in an attempt to discredit Arambula's reliability, Arambula explained that the circumstances in which committed individuals are placed minimizes their opportunities for reoffending. Given Arambula's extensive testimony regarding his credentials, coupled with his testimony supporting his methodology, assuming

16

error, we conclude the error likely made no difference in the jury's verdict. *See id.* We overrule this issue.

5. Cross-Examination of Alleged Incident of Bad Behavior

Hill argues the trial court abused its discretion in refusing to allow him to cross-examine Arambula "regarding an incident at the office of [Hill]'s sex-offender treatment provider." The State responds that Hill failed to preserve this issue for review.

During direct examination, the State asked Proctor about an incident involving Hill. Proctor explained that Hill's treatment provider noted an incident where Hill was supposed to be at his office, but the provider could not locate him. Hill was missing for about 15 minutes. When Hill eventually arrived, he explained that he had gone to smoke a cigarette and wait for his fiancée. However, the provider had previously looked outside for Hill and had not seen him. Defense counsel chose not to question Proctor about this matter.

During cross-examination, Arambula testified that he did not believe that Hill had been able to control his behavior for the last two-and-a-half years. He explained that Hill had not followed the rules. Arambula testified that Hill had been "missing in action" at his treatment provider's office earlier in the year, had taken off his ankle monitor, and had been caught with contraband. Defense

17

counsel questioned Arambula regarding his knowledge of Hill's treatment provider's concern for his patients' activities inside his building when they are not in his office receiving treatment. The State objected based on relevance, and the trial court sustained the objection. Hill's counsel failed to make an offer of proof, and did not identify the answers he expected to receive from Arambula to the proffered questions. Without an offer of proof, we cannot determine whether the exclusion of the evidence was harmful. *Perez*, 74 S.W.3d at 66-67. We overrule this issue with regard to testimony from Arambula.

6. Cross-Examination Regarding Arambula's Opinions of Tennison's Methodology

Hill argues that the trial court abused its discretion in refusing to allow him to cross-examine Arambula on the methodology used by Hill's psychiatric expert, Tennison. Hill's counsel attempted to question Arambula regarding case law referenced in Tennison's report that Tennison relied on in conducting his analysis. The State argues that these questions did not address Tennison's methodology, that Hill's offer of proof was unrelated to the excluded testimony, and the trial court did not err by refusing to allow appellant to cross-examine Arambula regarding appellate law.

18

During Hill's offer of proof, Arambula acknowledged that one page of Tennison's report referenced case law from the Ninth Court of Appeals and the United States Supreme Court. Nothing else asked during the offer of proof related to Tennison's report or his methodology. The offer of proof fails to establish that Hill was harmed by the trial court's refusal to allow Hill to cross-examine Arambula on Tennison's methodology. We overrule this issue.

D. Testimony of Dr. John Tennison

1. Exclusion of Testimony Related to Methodology

In issue eight, Hill argues that the trial court committed reversible error in not allowing Tennison to fully explain his methodology to the jury, which includes his analysis of appellate court opinions. Hill's counsel made an offer of proof. While the trial court did not allow Tennison to discuss specific court opinions, Tennison did testify at length about his methodology.

Tennison testified that "[f]orensic psychiatry is simply a term that applies to any form of psychiatry that interacts with the legal system in some way." He testified that he is qualified to determine whether Hill has a behavioral abnormality through his general training, his ability to read the sexually violent predator statute, and his ability to apply a legal definition to an individual whom he is evaluating. Tennison testified that he has extensively studied the methodology used in

19

conducting these types of evaluations from various journals and manuals. He also indicated that he has had training in the Static-99 and the PCL-R. He testified he has also received training in applying legal definitions to psychiatrically relevant forensic questions. He clarified that he is not an attorney. However, he testified that it is necessary for him to be able to read and understand the SVP statute because he is "being asked to give a professional opinion as to whether [Hill] fulfills a statutory definition[.]" He explained that if an expert could not read a statute and make sense of what it says, then the expert would be unable to give an opinion as to whether the statute applies to the individual he is evaluating. He further testified that it is important for a forensic psychiatrist to be able to follow and understand changes in statutes and that "[c]ase law constrains the way that [a forensic psychiatrist] can understand the statute."

He explained that as part of his methodology he analyzes a statute "piece-by-piece[.]" He then described in detail the steps he took in evaluating Hill. He reviewed Hill's legal records, his TDCJ records, and other evaluations that had been done on Hill. He testified that he relied on the information in these records. He then evaluated Hill in person.

During his Static-99 training in 2009, he received the new sexual recidivism risk tables, which Tennison testified demonstrate that Hill is not likely to engage in

20

a predatory act of sexual violence. He testified that the Static-99 scoring calculates probabilities of risks. He explained:

> In the case of [Hill], those are all--you have to use your clinical judgment to decide where along a range of risk probabilities someone falls. But whether you look at the least risky or all the way up to the most risky, [Hill's] rate of recidivism based on the Static-99--not even considering the law requirements, which are over and beyond that--just looking at the Static-99 and doing a generic risk assessment--even if there wasn't a behavior[al] abnormality would show that his risk of recidivism is well below 50 percent or at a level that could be considered more likely than not.

Tennison testified that based on the legal definitions of behavioral abnormality and sexually violent predator, his education, training, and research, Hill's records, and his interview with Hill, Tennison does not believe that Hill has a behavioral abnormality.

Given our review of the entire record, Hill's offer of proof does not persuade us that the information he sought to develop before the jury relating to the specifics of case law was significant to Tennison's opinions on the dispositive issue of whether Hill has a behavioral abnormality. Tennison was able to explain his analysis, and he fully explored why he felt that Hill does not have a behavioral abnormality and is not likely to commit a predatory act of sexual violence. We further note that an expert witness generally may not testify regarding his opinion on a pure question of law. *Upjohn Co. v. Rylander*, 38 S.W.3d 600, 611 (Tex.

21

App.—Austin 2000, pet. denied) (stating that matters of statutory construction are questions of law for the Court to decide and an expert witness may not testify regarding an opinion on a pure question of law). We conclude the trial court did not abuse its discretion and overrule issue eight as it concerns the testimony of Tennison.

2. Exclusion of Testimony Related to Hill's Ability to Control His Behavior

In issue nine, Hill argues that the trial court committed reversible error by excluding Tennison's testimony regarding Hill's ability to control his behavior. Specifically, Hill complains that the trial court erred when it excluded Tennison's testimony which compared Hill's relative ability to control his behavior to that of a typical repeat offender.

On redirect, Hill's counsel continued to pursue this line of questioning, but the trial court again sustained the State's objection, indicating that the comparisons were not relevant. Hill made an offer of proof:

> Q. Okay. When you were considering whether [Hill] has a significant difficulty controlling his behavior, did you make a comparison between his ability to control his behavior and the ability of a typical repeat offender's ability to control their behavior?
>
> A. Yes. That was a serious part of my consideration.
>
> Q. Did you find a difference?

A. Well, yes. I regard Mr. Hill as having the ability to control his behavior based on his innate condition. He does not--not only does he not have a chance of recidivism in the general sexual sense, he also doesn't have a high probability or likelihood of recidivism from a behavior[al] abnormality as defined by the statute.

Hill argues that this testimony directly addresses one of the prerequisites for involuntary civil commitment. The State argues that Tennison never explained in the offer of proof what distinguishes Hill from a typical repeat offender, other than that Tennison believed Hill could control his behavior. The State explains that it is the existence of the behavioral abnormality that makes Hill different.

The record demonstrates that Tennison testified that he believed that Hill did not have a behavioral abnormality and that Hill could control his behavior. The record further reflects that Tennison was able to support his opinions through testimony explaining his basis. We are not persuaded that Hill was harmed by the trial court's ruling excluding the testimony at issue. We find that the proffered testimony was cumulative and, therefore, its exclusion would be harmless error. *See* Tex. R. App. P. 44.1, *see Cent. Expressway Sign Assocs.*, 302 S.W.3d at 870.

E. Exclusion of Testimony of Respondent Seth Hill

In issue ten, Hill argues that the trial court committed reversible error by excluding Hill's testimony explaining why he was required to reside at the Ben Reid Facility. Hill argues that under Rule 107 of the Texas Rules of Evidence, he

23

"had the right to explain the circumstances surrounding the requirement that he reside at the Ben Reid Facility as part of his involuntary participation in the State-mandated sex-offender treatment program." Rule 107 provides in part:

> When part of an act, declaration, conversation, writing or recorded statement is given in evidence by one party, the whole on the same subject may be inquired into by the other, and any other act, declaration, writing or recorded statement which is necessary to make it fully understood or to explain the same may also be given in evidence[.]

Tex. R. Evid. 107. Hill made an offer of proof. In relevant part, Hill's counsel stated to the trial court:

> [Defense Counsel]: I would expect him to testify that the reason that he has been residing at Ben Reid since March of 2009, is that he was tried in this courtroom for a determination of whether he was a sexually violent predator and that he was taken directly from prison to the Ben Reid Facility after that trial, that the same issues tried in that case were tried in this case, and that we were having this trial again because the Texas Supreme Court reversed the decision of the first trial, that the Texas Supreme Court reversed the decision on the first trial in April of this year.
>
> . . . .
>
> That he was not released from the Ben Reid Facility after the Texas Supreme Court reversed the decision of the first trial in which he was determined to be a sexually violent predator, that he thinks that he should have been released, that he experienced deep dissatisfaction and disappointment that he wasn't released, but that he reacted to that appropriately and managed to control his behavior with respect to that disappointment; that that response would have been different when he was younger and abusing drugs and alcohol.

Hill essentially argues that when he tried to explain to the jury that he entered the program involuntarily, the trial court erroneously ruled this testimony was irrelevant. However, the trial court had previously admitted testimony of this nature. Hill testified that he was released from prison March 11, 2009. Hill testified that in 2007-2008 two doctors determined that he was a high-risk sex offender and as a result, he began State-mandated treatment in March 2009. Hill testified that he has resided at the Ben Reid Facility since his release from prison. As noted above, the fact that Hill was labeled a high-risk sex offender and placed in State-*mandated* treatment informs the jury that his treatment was involuntary.

The decision to admit or exclude evidence is within the trial court's discretion. *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995). The trial court could reasonably view the testimony at issue as cumulative of other information showing that Hill had not made the choice to live at the facility and that he was required to remain there. Because the testimony at issue was not necessary for the jury to understand that Hill was required to live at the facility, the trial court did not abuse its discretion by excluding it. *See id.* We overrule Hill's tenth issue.

## II. Motion for Mistrial

In his eleventh issue, Hill argues the trial court erred in denying his motion for a mistrial. Hill specifically complains about comments made by the prosecuting attorney during her cross-examination of Tennison. Tennison testified that his methodology had been published only on his blog. The State then asked, "Is that the same blog where you have pictures of, like, dildos and talk about weapons of mass destruction?" Defense counsel objected on the grounds that the question was not relevant. The trial court sustained Hill's objection and then instructed the jury to disregard the State's question, but denied Hill's request for a mistrial.

We review a trial court's ruling on a motion for mistrial for an abuse of discretion. *In re J.A.*, 109 S.W.3d 869, 874 (Tex. App.—Dallas 2003, pet. denied). An abuse of discretion occurs if the trial court acts without reference to any guiding rules and principles. *Id*. We presume the jury followed the trial court's instruction to disregard the objectionable matter, unless there is evidence to the contrary. *Id*.

Hill contends that throughout the trial the State's attorney portrayed Tennison as a "rogue psychiatrist" and that the State's proffered question was intended to taint the jury into believing that Hill's "expert witness is a kook[.]" Hill complains about the State's opening argument wherein, the prosecutor argued

26

that Tennison has "flawed methodology and bias." Next, Hill complains about Proctor's testimony that he has not heard of anyone else using or teaching Tennison's methodology. Proctor also noted that Tennison's methodology is organized differently than what is typical in the field. Hill complains that Arambula testified that he has not seen a methodology wherein the psychiatrist does not look for a mental condition; Arambula agreed that Tennison's approach is not typical. In rebuttal, Arambula testified that he was present during Tennison's testimony and that he found most of Tennison's testimony troubling. Arambula went on to explain to the jury why he disagreed with Tennison's assessment of Hill. Hill notes that during the State's closing argument, the prosecutor argued that "Dr. Tennison is the outlier here[,] [n]ot Dr. Proctor, not Dr. Arambula."

Reviewing the record as a whole, we are not persuaded that the jury failed to disregard the questions as instructed. We conclude the trial court did not abuse its discretion in denying Hill's motion for mistrial. We overrule Hill's eleventh issue.

### III. Jury Charge

We review the trial court's decision to refuse a particular instruction for an abuse of discretion. *In re Commitment of Miller*, 262 S.W.3d 877, 891 (Tex. App.—Beaumont 2008, pet. denied) (quoting *In re V.L.K.*, 24 S.W.3d 338, 341 (Tex. 2000)). A trial court must "submit such instructions and definitions as shall

27

be proper to enable the jury to render a verdict." Tex. R. Civ. P. 277. However, the trial court is given considerable discretion in determining whether jury instructions are necessary and proper. *Miller*, 262 S.W.3d at 891 (quoting *V.L.K.*, 24 S.W.3d at 341). A trial court's instruction is proper if it assists the jury, accurately states the law, and has support in the pleadings and evidence. *In re Commitment of Almaguer*, 117 S.W.3d 500, 502 (Tex. App.—Beaumont 2003, pet. denied). For an appellant to obtain a reversal of a judgment based on jury charge error, the appellant must show that the claimed error "probably caused the rendition of an improper judgment" or "probably prevented the appellant from properly presenting [his] case to the court of appeals. Tex. R. App. P. 44.1(a).

A. Limiting Instruction on Hearsay Evidence

In his twelfth issue, Hill argues that the trial court committed reversible error by denying his limiting instruction on hearsay evidence. Hill argues that Proctor and Arambula testified extensively from hearsay data and "[w]ithout a precise instruction, the jury could not distinguish which evidence it could consider for its substantive value and which evidence it could not. During trial, defense counsel objected to Proctor's testimony relating what the records showed about Hill's convictions, as inadmissible hearsay. The trial court overruled Hill's objection, but granted Hill a running objection and instructed the jury as follows:

28

. . . Hearsay normally is not admissible; however, certain hearsay information contained in records reviewed by experts is allowed into evidence through the expert's testimony. Such evidence is admitted only for the purpose of showing the basis of the expert's opinion.

Later, during Arambula's testimony, defense counsel objected to Arambula's testimony related to hearsay contained in the records. The trial court overruled the objection and again instructed the jury on the proper use of hearsay information:

THE COURT: Okay. As I have told you once already, when experts testify, hearsay normally is not admissible. However, certain hearsay information contained in records and used by experts is allowed into evidence through the expert's testimony. Such evidence is admitted only for the purpose of showing the basis of the expert's opinion.

Additionally, the trial court submitted the following limiting instruction to the jury in the charge:

Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered to prove the truth of the matter asserted. Certain hearsay information contained in records reviewed by the experts was admitted before you through expert testimony. Such hearsay was admitted only for the purpose of showing the basis of the experts' opinion and cannot be considered as evidence to prove the truth of the matter asserted.

During the charge conference, Hill requested the court's instruction be amended to read as follows:

Hearsay is a statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.

29

Testimony by experts: If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise.

Hearsay is not admissible as evidence in trial except as provided by narrow and specific hearsay exceptions. Certain evidence was admitted before you in the form of statements found in various records reviewed by expert witnesses. The evidence contained in the records about the respondents underlying sex offenses or the opinions of other witnesses who did not testify would ordinarily be hearsay evidence and thus would not be admissible in this trial, but because the expert witnesses relied upon the records in forming the bases of their opinions, this particular evidence was admitted for the narrow purpose of explaining the bases of their opinion testimony, but not for any other purpose, including whether the facts alleged in the records are true. You will therefore consider this evidence only for the narrow purpose for which it was admitted and for no other purpose.

Hill argues that he was entitled to this instruction under Rule 705(d) of the Texas Rules of Evidence.[1]

---

[1] Rule 705, in pertinent part, states:

**(d) Balancing test; limiting instructions**. When the underlying facts or data would be inadmissible in evidence, the court shall exclude the underlying facts or data if the danger that they will be used for a purpose other than as explanation or support for the expert's opinion outweighs their value as explanation or support or are unfairly prejudicial. If otherwise inadmissible facts or data are disclosed before the jury, a limiting instruction by the court shall be given upon request.

Tex. R. Evid. 705(d).

The record reflects that the trial court gave a limiting instruction in response to Hill's request during Proctor's testimony. Additionally, in the jury charge, the court instructed that hearsay information contained in records reviewed by the experts had been admitted only for showing the basis of the experts' opinions. Hill argues this instruction was insufficient, but cites no appropriate legal authority in support of this contention.

We conclude the trial court did not abuse its discretion in denying Hill's requested instruction. We conclude the alleged error did not cause the jury to reach an improper judgment. *See* Tex. R. App. P. 44.1(a). We overrule Hill's twelfth issue.

B.  Instruction on the Burden of Proof

In his thirteenth issue, Hill argues that the trial court erred in refusing his instruction on the burden of proof. Specifically, Hill complains that the trial court refused to give a written instruction on reasonable doubt. Hill complains that the jury was not adequately apprised of the allocation of the burden of proof. Hill alleges that while the State's attorney informed the jury-selection panel that the State bore the burden of proof, "the trial court read a rather Spartan charge to the jury, entirely silent as to the placement of the burden of proof." Hill requested an instruction that stated:

31

In order to find Respondent to be a sexually violent predator, you must find beyond a reasonable doubt that the Respondent is (l) a repeat sexually violent offender; and (2) suffers from a behavioral abnormality that makes a person likely to engage in a predatory act of sexual violence.

All persons are presumed to not be a sexually violent predator and no person may be found to be a sexually violent predator unless the Petitioner proves each element beyond a reasonable doubt. The fact that the Respondent has been sued and required to answer gives rise to no inference at his trial that he is a sexually violent predator.

The law does not require the Respondent to prove he is not a sexually violent predator or produce any evidence at all. The presumption that he is not a sexually violent predator alone is sufficient to answer Respondent is not a sexually violent predator, unless the jurors are satisfied beyond a reasonable doubt of the [sic] Respondent is a sexually violent predator after careful and practical consideration of all of the evidence in the case.

The Petitioner has the burden of proving the Respondent is a sexually violent predator and it must do so by proving each and every element beyond a reasonable doubt. If the Petitioner fails to do so, you must answer no.

It is not required that Petitioner prove its case beyond all possible doubt; it is required that the petitioner's proof excludes all "reasonable doubt" concerning the Respondent's status.

In the event you have a reasonable doubt as to whether the Respondent is a sexually violent predator after considering all the evidence before you, and these instructions, you will find that he is not and so say by your verdict, "NO."

You are further instructed as a part of the law in this case that the petition filed against the Respondent is not evidence in the case, and that the true and sole use of the petition is to allege that

Respondent is a sexually violent predator and to inform the Respondent of the allegations against him.

The trial court denied Hill's requested instruction.

The jury instructions provided that a "yes" answer must be based on a belief beyond a reasonable doubt. Further, the charge submitted by the trial court placed the burden on the State by stating the question as follows: "Do you find beyond a reasonable doubt that SETH HILL suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence?" However, Hill complains that this language was insufficient to adequately apprise the jury as to the allocation of the burden of proof.

Rule 277 of the Texas Rules of Civil Procedure states that "[t]he placing of the burden of proof may be accomplished by instructions rather than by inclusion in the question." Tex. R. Civ. P. 277. "[T]he Rules of Civil Procedure contemplate that the jury can be instructed about applying the burden of proof in one of two ways: an admonitory instruction *or* by placement of the burden through the question." *In re Commitment of Beasley*, No. 09-08-00371-CV, 2009 WL 3763771, at *7 (Tex. App.—Beaumont Nov. 12, 2009, pet. denied) (mem. op.). Like in *Beasley*, the phrasing of the question in this case placed the burden of proof on the State, since an affirmative answer to the question required the State to prove, beyond a reasonable doubt, that Hill suffers from a behavioral abnormality

33

that makes him likely to engage in a predatory act of sexual violence. *See id.* We conclude that the question the trial court posed to the jury in the charge properly placed the burden of proof on the State. *See id.* We overrule issue thirteen.

C. Definition of Behavioral Abnormality

In his fourteenth issue, Hill argues that the trial court erred in refusing to include his definition of behavioral abnormality in the charge to the jury. Hill requested an instruction that stated, "'A condition which affects either emotional capacity or volitional capacity to the extent a person is predisposed to threaten the health and safety of others with acts of sexual violence is an abnormality which causes serious difficulty in behavior control.'" The trial court denied Hill's request. Instead, the trial court submitted a definition of behavioral abnormality that tracked the language of the statute: "'[behavioral abnormality]' means a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person.'" *See* Tex. Health & Safety Code Ann. § 841.002(2).

When a case is governed by a statute, as it is here, the jury charge should track the statutory language as closely as possible. *Almaguer*, 117 S.W.3d at 502.

34

Because the definition of behavioral abnormality substituted by the court tracked the language of the statute, we overrule Hill's fourteenth issue.

Having overruled Hill's fourteen issues, we affirm the trial court's judgment.

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on August 20, 2012
Opinion Delivered February 28, 2013

Before McKeithen, C.J., Kreger and Horton, JJ.

35