**In the Interest of J.A. and N.A.**

No. 05–02–00829–CV.

Court of Appeals of Texas,
Dallas.

July 9, 2003.

Lynn Cherry, Dallas, for Ad litem.

Paula Jean Gaus, Irving, Stephen Douglas Skinner, Dallas, for Appellant.

Charles Patrick Reynolds, Asst. Dist. Atty., Leah Lucious, Asst. Dist. Atty, Dallas, for Appellee.

Before Justices WRIGHT, FITZGERALD and LANG.

## OPINION

Opinion By Justice WRIGHT.

Linda Arnone (Mother) and Christopher Arnone (Father) appeal the termination of their parental rights to their two children J.A. and N.A.[1] In four issues, Mother and Father assert that (1) the trial court erred in failing to comply with section 263.401 of the family code and dismiss the termination suit, (2) the trial court erred in failing to appoint expert witnesses on behalf of Mother and Father, (3) the trial court erred in failing to grant a mistrial, and (4) the evidence was insufficient to support termination of Mother's parental rights. We affirm.

## BACKGROUND

Mother and Father were divorced on March 8, 2000. Dallas County Child Protective Services Unit filed a suit affecting the parent-child relationship on March 9, 2000. As grounds for removing the children, CPS asserted that Mother failed to follow the family service plan that prohibited unsupervised contact between Father and the children. The trial court conducted a hearing the following day and appointed CPS temporary managing conservator of the children.

On September 15, 2000, CPS filed a petition for termination of parental rights.[2] On February 1, 2001, the termination suit went to trial before the court. On March 16, 2001, the trial court signed an order dismissing the lawsuit pursuant to section 263.401 of the family code. On that same day, the trial court also signed a decree

---

1. N.A. is Father's biological child. J.A. is Father's adoptive child.

2. The trial court subsequently severed and ordered a new cause number as to J.A. on

January 31, 2001. CPS then filed suit to terminate the parental rights between Father and J.A. On March 1, 2001, the trial court vacated the severance order.

terminating Mother's rights to both J.A. and N.A. and Father's rights as to N.A.

Following the dismissal order, CPS filed a new petition for termination of Father's rights as to J.A. Then, on April 16, 2001, the trial court vacated the order of dismissal and entered a nunc pro tunc decree of termination, terminating Mother's parental rights to both children and Father's parental rights to N.A.

CPS filed a petition for termination of both parents' parental rights on May 18, 2001. The trial court conducted a hearing on the request for emergency relief on May 30, 2001. Based on the testimony at the hearing, on May 31, 2001, the trial court ordered that N.A. be returned to Mother by 5:00 p.m. the following day. Before the 5:00 p.m. deadline for N.A.'s return to Mother, the guardian ad litem for the children filed a petition to modify in suit affecting the parent-child relationship. The guardian ad litem requested termination of parental rights, grandparent access, and request for temporary orders. The guardian ad litem presented the trial court with five affidavits. Michelle Lundberg, CPS caseworker, testified in her affidavit as to J.A.'s outcry of sexual abuse by his father. She also stated that both boys admitted that Mother had caught J.A. molesting N.A. in the bathtub and merely told the boys not to bathe together anymore. Barbara Sanders, a CPS supervisor, recounted the sexual abuse evidence that surfaced after the children were first removed. The three other affidavits were from the children's counselors and they detailed the detrimental effects upon the children if they were returned to their parents. The counselors' opinions turned, in part, on the sexual abuse evidence that surfaced after the first trial. The trial court granted the guardian ad litem's request for a temporary restraining order and N.A. was not returned to Mother as ordered the day before.

**Failure to Dismiss**

In their first issue, appellants complain that the trial court erred in failing to dismiss the case and return the children in compliance with section 263.401 of the family code. Appellants also contest the authority of the guardian ad litem to file suit and seek removal of the children.

A trial court must dismiss a suit affecting the parent-child relationship if it fails to render a final order or grant an extension on the first Monday following the anniversary date that the court appointed CPS as temporary managing conservator. TEX. FAM.CODE ANN. § 263.401(a) (Vernon 2002). However, a party waives the right to complain of the trial court's failure to dismiss the suit unless he moves the trial court to render a final order before the deadline for dismissal or makes a timely motion to dismiss the case. TEX. FAM.CODE ANN. § 263.402(b) (Vernon 2002); *In re J.B.W.*, 99 S.W.3d 218, 224 (Tex.App.-Fort Worth, 2003, pet. filed).

The trial court appointed CPS temporary managing conservator of J.A. and N.A. on March 10, 2000. Accordingly, the deadline for either entry of a final order or dismissal was March 12, 2001. *See* TEX. FAM.CODE ANN. § 263.401(a) (Vernon 2002). The case proceeded to trial on February 1, 2001. The March 12 deadline passed without entry of a final judgment or a motion to dismiss. On March 16, 2001, the trial court entered an order that stated "pursuant to TFC 263.401 that this matter is DISMISSED by operation of law." On that same date the trial court entered a "final decree of termination."

Mother filed a motion on April 2, 2001 asking the trial court to vacate the termination decree in favor of the dismissal order. Father also filed a motion to

dismiss on April 2, 2001. Both motions were filed after the March 12 deadline. Because appellants filed their motions to dismiss after the March 12 deadline, they have waived their right to complain of the trial court's failure to dismiss. *See* TEX. FAM.CODE ANN. § 263.402(b) (Vernon 2002). Moreover, CPS had the authority to file a new termination suit following dismissal pursuant to section 263.401(a). *See In re L.J.S.,* 96 S.W.3d 692, 694 (Tex.App.-Amarillo 2003, pet. filed).[3]

Additionally, appellants contest the authority of the guardian ad litem to step in and file a suit just hours before N.A. was to be returned to Mother. The role of a guardian ad litem is to ensure adequate representation of the child. *See* TEX. FAM. CODE ANN. § 107.012 (Vernon 2002). The guardian ad litem filed suit pursuant to section 102.003(a)(2) of the family code. That section provides that an original suit may be filed at anytime by "the child through a representative authorized by the court." TEX. FAM.CODE ANN. § 102.003(a)(2) (Vernon 2002).

Appellants admit that the guardian ad litem has the authority to seek termination of parental rights. They insist, however, that she does not have the authority to seek appointment of a temporary managing conservator without notice and hearing or the authority to remove the children. We agree with appellants' contentions. However, for reasons that follow, we conclude that they are inapplicable to our case.

A person or entity filing a suit affecting the parent-child relationship may request and the trial court may grant temporary orders for the temporary conservatorship of the child. TEX. FAM.CODE ANN. § 105.001(a)(1) (Vernon 2002). Section 105.001 provides, in pertinent part, as follows:

(a) In a suit, the court may make a temporary order, including the modification of a prior temporary order, for the safety and welfare of the child, including an order:

(1) for the temporary conservatorship of the child;

(2) for the temporary support of the child;

(3) restraining a party from molesting or disturbing the peace of the child or another party;

(4) prohibiting a person from removing the child beyond a geographical area identified by the court; or

(5) for payment of reasonable attorney's fees and expenses.

(b) Except as provided by Subsection (c), temporary restraining orders and temporary injunctions under this section shall be granted without the necessity of an affidavit or verified pleading stating specific facts showing that immediate and irreparable injury, loss, or damage will result before notice can be served and a hearing can be held. Except as provided by Subsection (h), an order may not be rendered under Subsection (a)(1), (2), or (5) except after notice and a hearing....

\* \* \*

(h) An order under Subsection (a)(1) may be rendered without notice and an adversary hearing if the order is an emergency order sought by a governmental entity under Chapter 262.

TEX. FAM.CODE ANN. § 105.001(a), (b), & (h) (Vernon 2002).

---

3. In the end, the first termination suit was dismissed. We cannot now do anything about the fact that the children were not returned the day the trial court entered the dismissal order.

We agree with appellants that only a governmental entity can obtain a temporary order naming a temporary conservator without a hearing. *See* TEX. FAM. CODE ANN. § 105.001(h) (Vernon 2002). However, our facts do not involve appointment of a temporary conservator without notice and a hearing. On June 1, the trial court did *not* name a temporary conservator. The trial court restrained the parties from molesting or disturbing the peace of the children and prohibited them from removing the children from their current placements. The family code authorizes the trial court to make such temporary orders without first conducting a hearing. *See* TEX. FAM.CODE ANN. § 105.001(a)(3) & (b) (Vernon 2002). Accordingly, section 105.001(h) is inapplicable to our facts.

Moreover, the guardian ad litem did not seek to remove the children from appellants. She filed suit before N.A. was returned to Mother. She was seeking to maintain the status quo—to keep the children in their current placements. Under the family code, the guardian ad litem had the authority to seek the requested temporary orders and the trial court had the authority to grant them. We overrule appellants' first issue.

### Failure to Appoint an Expert Witness

In their second issue, appellants assert they were denied due process when the trial court denied their motion for appointment of independent expert witnesses.

Although, appellants indicate in their brief that both of them requested the appointment of an expert witness, we find no reference in the record to a motion for an expert witness filed by Father. The trial court's order references an oral motion for appointment of an expert witness by Mother. We have no record of Mother's oral motion. On November 29 and December 10, 2001, the trial court considered Mother's oral motion along with other matters. We have no reporter's record from these hearings. The trial court denied Mother's oral motion in an order signed January 29, 2002. The record before this Court presents nothing for review. Appellants provide no references to the record to support their argument. Appellants have failed to adequately brief this issue on appeal. TEX. R.APP. P. 38.

We overrule appellants' second issue.

### Denial of Motion for Mistrial

In their third issue, appellants complain of the trial court's denial of their motion for mistrial. Appellants moved for a mistrial following television news coverage seen by three jurors during the trial.

To preserve error, a party must make a timely request to the trial court. TEX.R.APP. P. 33.1(a)(1). We review a trial court's ruling on a motion for mistrial for an abuse of discretion. *City of Jersey Village v. Campbell*, 920 S.W.2d 694, 698 (Tex.App.-Houston [1st Dist.]1996, writ denied). It is an abuse of discretion if the trial court acts without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985). In the absence of evidence to the contrary, we presume the jury followed the trial court's instructions. *Turner, Collie & Braden Inc. v. Brookhollow, Inc.*, 642 S.W.2d 160, 167 (Tex.1982); *Owens–Corning Fiberglas Corp. v. Martin*, 942 S.W.2d 712, 718 (Tex.App.-Dallas 1997, no writ).

All attorneys were fully aware of the television crew outside the courtroom doors. The television station ran a piece on the trial. Three jurors saw the broadcast. The following day, appellants moved for a mistrial based on the news coverage. Appellants' attorneys acknowledged that

they were fully aware of the presence of the television news crew outside of the courtroom. The trial court concluded appellants, knowing the television crew was outside the courtroom doors, should have requested at that time that the jury be instructed not to watch any television coverage of the trial. Accordingly, the trial court denied appellants' motion for mistrial, instructed the jurors to disregard what they had seen on the broadcast, and further instructed them not to watch that station's news program for the remainder of the trial. We presume that the jury followed the trial court's instructions. *See Turner, Collie & Braden Inc.*, 642 S.W.2d at 167; *Martin*, 942 S.W.2d at 718. We conclude the trial court did not abuse its discretion in denying the motion for mistrial. We overrule appellants' third issue.

### Sufficiency of the Evidence

In their final issue, appellants assert the evidence is legally and factually insufficient to support termination of Mother's parental rights.

Clear and convincing evidence must support each finding in a termination case. TEX. FAM.CODE ANN. § 161.206(a) (Vernon 1996). The family code defines clear and convincing evidence as "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM.CODE ANN. § 101.007 (Vernon 1996).

In reviewing a legal sufficiency issue, we consider only the evidence in support of the verdict and disregard all contrary evidence. *In re M.A.N.M.*, 75 S.W.3d 73, 77 (Tex.App.-San Antonio 2002, no pet.). If there is more than a scintilla of evidence in support of the verdict, the evidence is legally sufficient. *Id.* In reviewing a factual sufficiency issue, we consider all of the evidence in the light most

favorable to the verdict. If the "evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations," the evidence is factually sufficient. *In re C.H.*, 89 S.W.3d 17, 25 (Tex.2002).

The family code provides the trial court may terminate a parent's rights to his or her child if the trial court finds by clear and convincing evidence (1) one of the enumerated statutory conditions *and* (2) termination is in the best interest of the child. TEX. FAM.CODE ANN. § 161.001(1) & (2) (Vernon Supp.2002). The family code provides for terminating parental rights if a parent:

> (D) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child, or
>
> (E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child.

TEX. FAM.CODE ANN. § 161.001(1)(D) & (E) (Vernon Supp.2002). To terminate parental rights under subsection D, the environment must endanger the child's physical or emotional well-being. Under subsection E, the parent must have engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangered the child's physical or emotional well-being. The parent's conduct, either by acts or omissions, must endanger the child. *In the Interest of S.H.A.*, 728 S.W.2d 73, 85(Tex.App.-Dallas 1987, writ ref'd n.r.e.) (en banc). "Endanger" means to expose to loss or injury. *In re M.C.*, 917 S.W.2d 268, 269 (Tex.1996). Although endanger means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environ-

ment, it is not necessary that the conduct be directed at the child or that the child actually suffer injury. *Id.*

Mother claims the evidence against her shows that "on one occasion, after [Father] had completed in-patient drug therapy, she inadvertently allowed [Father] unsupervised access to the child for about ten minutes." Mother's summary of the evidence is incomplete.

The evidence also showed that Father sexually abused J.A. Lisa Cardenas, case work supervisor with CPS testified about J.A.'s outcry of sexual abuse. J.A. described one incident of sexual abuse by Father. Cardenas testified that there is a very high probability that a child who sexually abuses another was a victim of sexual abuse himself.

Stephanie Boniol, an investigative caseworker with CPS, investigated the case at the time the children were removed from their home. Mother admitted to Boniol that she had allowed a few unsupervised visits between Father and the children because he missed them. Mother also admitted that Father used drugs and he physically abused the children.

JoAnn Burnett found both boys in J.A.'s bed naked. N.A. said J.A. "poked him in the bottom." N.A. told Burnett that this behavior "happened at Mommy's house." J.A. admitted that Mother had caught them having oral sex in the bathtub.

Tammy Kelly lived a few doors down from appellants. She used to babysit J.A. and N.A. Mother once asked her what she should do about some severe bruises on J.A. J.A. had told Mother that Father had harmed him while she was sleeping. That same day, Kelly witnessed a disturbing incident between Mother and J.A. After J.A. had defecated in his pants, Mother took J.A.'s underwear and smeared it across his face and said "here's your F"ing dinner." Kelly reported this incident to CPS. After this incident, Kelly stopped babysitting for J.A. and N.A. and ended her relationship with appellants.

In violation of CPS's family safety plan, Mother allowed Father to have unsupervised visits with J.A. and N.A. Mother even allowed contact between Father and the children after she herself obtained a temporary restraining order requiring Father to stay away from all of them. Mother has repeatedly demonstrated her unwillingness to protect J.A. and N.A. from the known abuse of Father. Moreover, she failed to protect N.A. after witnessing J.A. and N.A. having oral sex in the bathtub. Mother did nothing following that incident to get help for the boys. Additionally, Mother was abusive to J.A., smearing his feces across his face.

We conclude the evidence is legally and factually sufficient to support the jury findings that Mother engaged in conduct that endangered the physical and emotional well-being of J.A. and N.A. and that Mother knowingly placed J.A. and N.A. in surroundings that endangered their physical and emotional well-being.

■■■ The jury also had to find, in addition to one of the statutory grounds, that terminating Mother's rights was also in the children's best interests. *See* TEX. FAM.CODE ANN. § 161.001(1) & (2) (Vernon 2002). In determining whether terminating the parent-child relationship is in a child's best interest, we must consider the following factors:

1. the child's desires;

2. the child's present and future emotional and physical needs;

3. the present and future and emotional and physical danger to the child;

4. the parenting abilities of the persons seeking custody;

5. the programs available to the persons seeking custody to help promote the best interest of the child;

6. the plans for the child by those persons seeking custody;

7. the stability of the home or proposed placement;

8. the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

9. any excuse for the acts or omissions of the parent.

*Holley v. Adams,* 544 S.W.2d 367, 371–72 (Tex.1976).

The evidence shows that N.A. had adjusted well to living with his aunt and uncle. N.A. was very involved in school and extra-curricular activities. While living with his aunt and uncle, N.A.'s physical and emotional needs have been met and they will continue to be met in the future. Burnett and her husband want very much to adopt N.A. and they are capable of providing him with a stable environment. By contrast, Mother's inability or unwillingness to protect N.A. from the abuse of Father and from the sexual abuse by J.A., demonstrates that the environment she would provide would involve physical and emotional danger to N.A.

With respect to J.A., the evidence shows that he suffered physical and emotional abuse by his Mother. Mother also failed to protect J.A. from the known physical abuse of Father. J.A.'s placement in the residential facility was the most appropriate place for J.A. to get the extensive treatment he needed following years of abuse. CPS planned to get J.A. the help he needed and hopefully place him for adoption. J.A. was fearful of appellants. The evidence at trial showed that returning J.A. to his parents would be very damaging for him.

We conclude the evidence is both legally and factually sufficient to support the jury finding that termination of Mother's parental rights was in the best interests of J.A. and N.A. We overrule appellants' final issue.

We affirm the trial court's judgment.