

# IN THE
# TENTH COURT OF APPEALS

### No. 10-13-00455-CV

## IN THE INTEREST OF I.R.K.-N., A CHILD

### From the 335th District Court
### Burleson County, Texas
### Trial Court No. 27,007

## MEMORANDUM  OPINION

Raising two issues, Appellant A.B. (alias Amy)[1] challenges the trial court's order of termination of her parental rights to I.R.K.-N. (alias Ike).[2]  Raising five issues, Appellant N.N. (alias Nate) also challenges the trial court's order of termination of his parental rights to Ike.  We will affirm.

In a proceeding to terminate the parent-child relationship brought under section 161.001, the Department must establish by clear and convincing evidence two elements: (1) one or more acts or omissions enumerated under subsection (1) of section 161.001, termed a predicate violation; *and* (2) that termination is in the best interest of the child.

---

[1] *See* TEX. R. APP. P. 9.8.

[2] L.K. (alias Lisa), another of Amy's children but of a different father, was originally a subject of this proceeding, but before trial Lisa was returned to Amy.

TEX. FAM. CODE ANN. § 161.001(1), (2) (West Supp. 2013); *Swate v. Swate,* 72 S.W.3d 763, 766 (Tex. App.—Waco 2002, pet. denied). The factfinder must find that both elements are established by clear and convincing evidence, and proof of one element does not relieve the petitioner of the burden of proving the other. *Holley v. Adams,* 544 S.W.2d 367, 370 (Tex. 1976); *Swate,* 72 S.W.3d at 766. If multiple predicate violations under section 161.001(1) were found in the trial court, we will affirm based on any one ground because only one predicate violation under section 161.001(1) is necessary to a termination judgment. *In re T.N.F.,* 205 S.W.3d 625, 629 (Tex. App.—Waco 2006, pet. denied), *overruled in part on other grounds by In re A.M.,* 385 S.W.3d 74, 79 (Tex. App.— Waco 2012, pet. denied).

After a jury trial and based on the jury's findings, the trial court found the following predicate violations as grounds for termination of Amy's and Nate's parental rights: (1) that they knowingly placed or knowingly allowed the child to remain in conditions or surroundings that endangered the physical or emotional well-being of the child (TEX. FAM. CODE ANN. § 161.001(1)(D)); and (2) that they engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangered the child's physical or emotional well-being (*id.* § 161.001(1)(E)).

Termination of Nate's parental rights was also based on the jury's findings that: (3) Nate failed to comply with provisions of a court order specifically establishing the actions necessary for the parent to obtain return of the child (*id.* § 161.001(1)(O)); and (4) Nate knowingly engaged in criminal conduct that has resulted in his conviction of an offense and confinement or imprisonment and inability to care for the child for not less

than two years from the date of the filing of the petition (*id.* § 161.001(1)(Q)).  Based on the jury's findings, the trial court also found that termination of Amy's and Nate's parental rights was in the child's best interest.

**Mistrial:**  We begin with Nate's first issue, which asserts that the trial court abused its discretion by denying Nate's motion for mistrial, which was made after Amy's testimony that Nate's parental rights should be terminated and that if they were, she would voluntarily relinquish her parental rights to Ike so that he could be adopted.[3] The basis for Nate's mistrial motion was that the Department and Amy were not antagonistic and were aligned to have Nate's parental rights terminated, and therefore the peremptory challenges given to each party resulted in a materially unfair trial to Nate.

> We review the trial court's denial of [a] motion for mistrial under an abuse of discretion standard.  *In re J.A.*, 109 S.W.3d 869, 874 (Tex. App.—Dallas 2003, pet. denied); *City of Jersey Village v. Campbell*, 920 S.W.2d 694, 698 (Tex. App.—Houston [1st Dist.] 1996, writ denied).  To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles, in other words, whether the act was arbitrary or unreasonable. *See Carpenter v. Cimarron Hydrocarbons Corp.*, 98 S.W.3d 682, 687 (Tex. 2002); *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985)[ ].  Merely because a trial court may decide a matter within its discretion in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Downer,* 701 S.W.2d at 241-42.

> An abuse of discretion does not occur where the trial court bases its decisions on conflicting evidence.  *Davis v. Huey,* 571 S.W.2d 859, 862 (Tex. 1978); *see also Goode v. Shoukfeh*, 943 S.W.2d 441, 446 (Tex. 1997). Furthermore, an abuse of discretion does not occur as long as some

---

[3] Amy preferred having her rights terminated by voluntary relinquishment because of the potential effect that involuntary termination could have on her in the future.  Also, if Nathan's rights were not terminated, Amy did not want her rights terminated.

evidence of substantive and probative character exists to support the trial court's decision. *Butnaru v. Ford Motor Co.,* 84 S.W.3d 198, 211 (Tex. 2002); *Holley v. Holley,* 864 S.W.2d 703, 706 (Tex. App.—Houston [1st Dist.] 1993, writ denied). However, a misinterpretation or misapplication of the law also is an abuse of discretion. *See Walker v. Packer,* 827 S.W.2d 833, 840 (Tex. 1992).

. . . .

The duty of the trial judge to alter the normal allocation of peremptory challenges in multiple party cases is set forth in Texas Rule of Civil Procedure 233. In multiple party litigation, upon the motion of a party made prior to the exercise of any peremptory challenges, the court has the duty to equalize the number of peremptory strikes among the sides. TEX. R. CIV. P. 233. In allocating peremptory challenges when multiple litigants are involved on one side of a lawsuit, the trial court must determine whether any of those litigants on the same side are antagonistic with respect to an issue of fact that the jury will decide. *Scurlock Oil Co. v. Smithwick,* 724 S.W.2d 1, 5 (Tex. 1986) (op. on reh'g.); *Garcia v. Central Power & Light Co.,* 704 S.W.2d 734, 736 (Tex. 1986); *Patterson Dental Co. v. Dunn,* 592 S.W.2d 914, 918 (Tex. 1979); *see also* TEX. R. CIV. P. 233. If no antagonism exists, each side must receive the same number of strikes. *Garcia,* 704 S.W.2d at 736; *Patterson,* 592 S.W.2d at 918.

The existence of antagonism is a question of law that is determined after voir dire and prior to the exercise of the parties' strikes and is based upon information gleaned from pleadings, pretrial discovery, information and representations made during voir dire, and any other information brought to the trial court's attention. *Scurlock,* 724 S.W.2d at 5; *Garcia,* 704 S.W.2d at 736-37; *Patterson,* 592 S.W.2d at 919. However, any error in the trial court's allocation of jury strikes among the parties must be preserved by a timely objection. *See In re T.E.T.,* 603 S.W.2d 793, 798 (Tex. 1980); *Patterson,* 592 S.W.2d at 921; *Tex. Commerce Bank Nat'l Ass'n v. Lebco Constructors, Inc.,* 865 S.W.2d 68, 77 (Tex. App—Corpus Christi 1993, writ denied), *overruled on other grounds by Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.,* 962 S.W.2d 507, 530 (Tex. 1998). Generally, the proper time to object to the trial court's allocation of strikes would be at the same time that the determination of antagonism by the trial court should be made—after voir dire and prior to the exercise of the strikes as so allocated by the court. *Lebco Constructors, Inc.,* 865 S.W.2d at 77.

*In re M.N.G.,* 147 S.W.3d 521, 530-32 (Tex. App.—Fort Worth 2004, pet. denied).

The Department asserts that Nate's complaint about the allocation of peremptory challenges was untimely because in voir dire Amy's attorney intimated that Amy might voluntarily relinquish her parental rights. Nate contends that it was not until Amy's testimony that Nate's rights should be terminated that it became apparent that Amy and the Department were aligned, and he argues that his complaint was thus timely. *See, e.g., id.* at 532-33; *Van Allen v. Blackledge,* 35 S.W.3d 61, 66-67 (Tex. App.—Houston [14th Dist.] 2000, pet. denied).

We assume without deciding that Nate's complaint was timely, but we agree with the Department that the trial court could have determined that the Department and Amy were antagonistic with respect to an issue of fact that the jury was to decide— whether Amy's rights should be involuntarily terminated. The jury decided that issue adversely to Amy, and the trial court denied her motions for JNOV and for a new trial; she now is appealing that verdict. Moreover, the trial court, in denying Nate's motion for mistrial, reiterated that the Department and Amy were not allowed to coordinate their peremptory challenges. In fact, they each struck three of the same venirepersons. We cannot say that the trial court abused its discretion in denying Nate's motion for mistrial, and we overrule his first issue.

**Sufficiency of the Evidence:** In issues two, three, and four, Nate challenges the legal and factual sufficiency of the evidence to support the jury's findings on the statutory predicate grounds for termination.[4] The Department asserts that Nate has not preserved his sufficiency complaints for appellate review. To preserve a factual-

---

[4] Nate does not challenge the jury's best-interest finding.

sufficiency complaint in a termination case for appellate review, a party must make that complaint in the trial court in a motion for new trial. *In re A.M.,* 385 S.W.3d 74, 78-79 (Tex. App.—Waco 2012, pet. denied).

We have held that, to preserve for appellate review a legal-sufficiency complaint in a termination case tried to a jury, a party must make that complaint in the trial court by: (1) a motion for new trial; (2) a motion for an instructed verdict; (3) an objection to the submission of a question in the jury charge; (4) a motion for a judgment notwithstanding the verdict; or (5) a motion to disregard the jury's answer to a question in the verdict. *In re H.D.B.-M.,* No. 10-12-00423-CV, 2013 WL 765699, at *8-9 (Tex. App.—Waco Feb. 28, 2013, pet. denied) (mem. op.); *see also In re S.J.T.B.,* No. 09-12-00098-CV, 2012 WL 5519208, at *6 (Tex. App.—Beaumont Nov. 15, 2012, no pet.) (mem. op.); *In re D.D.J.,* 178 S.W.3d 424, 426-27 (Tex. App.—Fort Worth 2005, no pet.); *In re J.M.S.,* 43 S.W.3d 60, 62 (Tex. App.—Houston [1st Dist.] 2001, no pet.).

The record reflects that Nate did not file a motion for new trial to complain of the factual insufficiency of the evidence and that he did not preserve his legal-sufficiency complaints in any of the above-described ways. Accordingly, Nate's issues two, three, and four are overruled.

Amy did file motions for JNOV and new trial complaining of the legal and factual sufficiency of the evidence. In her two issues, she challenges the legal and factual sufficiency of the evidence to support the two endangerment grounds and the best-interest finding.

The standards of review for legal and factual sufficiency in termination cases are

well established.  *In re J.F.C.*, 96 S.W.3d 256, 264-68 (Tex. 2002) (legal sufficiency); *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002) (factual sufficiency).  In reviewing the legal sufficiency, we view all the evidence in the light most favorable to the finding to determine whether a trier of fact could reasonably have formed a firm belief or conviction about the truth of the Department's allegations.  *In re J.L.*, 163 S.W.3d 79, 84-85 (Tex. 2005); *J.F.C.*, 96 S.W.3d at 265-66.  We do not, however, disregard undisputed evidence that does not support the finding.  *J.F.C.*, 96 S.W.3d at 266.  In reviewing the factual sufficiency of the evidence, we must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing.  *Id.*  We must consider the disputed evidence and determine whether a reasonable factfinder could have resolved that evidence in favor of the finding.  *Id.*  If the disputed evidence is so significant that a factfinder could not reasonably have formed a firm belief or conviction, the evidence is factually insufficient.  *Id.*

The jury found, and the trial court ordered termination on, the grounds that Amy knowingly placed or knowingly allowed the child to remain in conditions or surroundings that endangered the physical or emotional well-being of the child (TEX. FAM. CODE ANN. § 161.001(1)(D), and that she engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangered the child's physical or emotional well-being (*id.* § 161.001(1)(E)).

To endanger means to expose to loss or injury, to jeopardize.  *Texas Dep't Human Servs. v. Boyd,* 727 S.W.2d 531, 533 (Tex. 1987); *see also In re M.C.,* 917 S.W.2d 268, 269 (Tex. 1996).  The specific danger to a child's physical or emotional well-being need not

be established as an independent proposition, but it may be inferred from parental

misconduct. *See Boyd,* 727 S.W.2d at 533.

> When termination of parental rights is based on section D, the endangerment analysis focuses on the evidence of the child's physical environment, although the environment produced by the conduct of the parents bears on the determination of whether the child's surroundings threaten his well-being. *In re S.M.L.,* 171 S.W.3d 472, 477 (Tex. App.—Houston [14th Dist.] 2005, no pet.). Section D permits termination if the petitioner proves parental conduct caused a child to be placed or remain in an endangering environment. *In re R.D.,* 955 S.W.2d 364, 367 (Tex. App.—San Antonio 1997, pet. denied).

> It is not necessary that the parent's conduct be directed towards the child or that the child actually be injured; rather, a child is endangered when the environment creates a potential for danger which the parent is aware of but disregards. *In re S.M.L.,* 171 S.W.3d at 477. Conduct that demonstrates awareness of an endangering environment is sufficient to show endangerment. *Id.* (citing *In re Tidwell,* 35 S.W.3d 115, 119-20 (Tex. App.—Texarkana 2000, no pet.) ("[I]t is not necessary for [the mother] to have had certain knowledge that one of the [sexual molestation] offenses actually occurred; it is sufficient that she was aware of the potential for danger to the children and disregarded that risk by … leaving the children in that environment.")). In considering whether to terminate parental rights, the court may look at parental conduct both before and after the birth of the child. *Avery v. State,* 963 S.W.2d 550, 553 (Tex. App.—Houston [1st Dist.] 1997, no pet.). Section D permits termination based upon only a single act or omission. *In re R.D.,* 955 S.W.2d at 367.

*Jordan v. Dossey*, 325 S.W.3d 700, 721 (Tex. App.—Houston [1st Dist.] 2010, pet. denied);

*see also In re C.W., Jr.,* No. 14-09-00306, 2009 WL 4694946, at *6 (Tex. App.—Houston

[14th Dist.] 2010, no pet.) (mem. op.).

Under subsection 161.001(1)(E), the relevant inquiry is whether evidence exists

that the endangerment of the child's physical well-being was the direct result of the

parent's conduct, including acts, omissions, or failures to act. *In re K.A.S.,* 131 S.W.3d

215, 222 (Tex. App.—Fort Worth 2004, pet. denied); *Dupree v. Tex. Dep't Prot. & Reg.*

*Servs.,* 907 S.W.2d 81, 83-84 (Tex. App.—Dallas 1995, no writ).

> Additionally, termination under subsection (E) must be based on more than a single act or omission; the statute requires a voluntary, deliberate, and conscious course of conduct by the parent. *J.T.G.,* 121 S.W.3d at 125; *see* TEX. FAM. CODE ANN. § 161.001(1)(E). It is not necessary, however, that the parent's conduct be directed at the child or that the child actually suffer injury. *Boyd,* 727 S.W.2d at 533; *J.T.G.,* 121 S.W.3d at 125. The specific danger to the child's well-being may be inferred from parental misconduct standing alone. *Boyd,* 727 S.W.2d at 533; *In re R.W.,* 129 S.W.3d 732, 738 (Tex. App.—Fort Worth 2004, pet. denied).

*In re T.T.F.,* 331 S.W.3d 461, 483 (Tex. App.—Fort Worth 2010, no pet.).

Domestic violence, want of self-control, and propensity for violence may be considered as evidence of endangerment. *See In re B.J.B.,* 546 S.W.2d 674, 677 (Tex. Civ. App.—Texarkana 1977, writ ref'd n.r.e.); *see also Sylvia M. v. Dallas County Welfare Unit,* 771 S.W.2d 198, 204 (Tex. App.—Dallas 1989, no writ) (considering "volatile and chaotic" marriage, altercation during pregnancy, and mother's repeated reconciliation with abusive spouse). Abusive or violent conduct by a parent or other resident of a child's home may produce an environment that endangers the physical or emotional well-being of a child. *Ziegler v. Tarrant County Child Welfare Unit,* 680 S.W.2d 674, 678 (Tex. App.—Fort Worth 1984, writ ref'd n.r.e.); *see also In re K.A.S.,* 131 S.W.3d at 222 (violent or abusive conduct by someone within household is environment that endangers children).

Amy and Nate met for what Nate said was a "one-night stand" through a mutual friend; Nate did not know Amy was married at the time. Nate said that he "fell" for Amy and that when Amy's husband found out about Nate and that Amy was possibly pregnant with Nate's child (Ike), Amy attempted suicide and was hospitalized. Amy's

parents disapproved of Nate and got her an apartment in Katy to get her away from Nate, but he continued to see her secretly. Amy lived with her five-year-old daughter Lisa in the apartment. Nate and Amy eventually married in April of 2011, but Amy testified that she would be filing for divorce once Nate's parental rights were terminated.

It is undisputed that domestic violence occurred between Nate and Amy.[5] Nate even admitted that the Department's intervention was warranted because of their domestic turmoil. Amy testified to these instances of domestic violence, which occurred both before and after Ike's birth:

- Nate choked her and kneed her while she was pregnant with Ike.[6] Nate pled guilty to that offense, but Amy took him back.

- He would not let her out of her bedroom, with Lisa on the other side screaming for Amy.

- He pushed her to the ground and kicked her a few times, with Lisa watching.

- He held her against her will with a knife to her throat while she was pregnant with Ike.

- He pushed her up against a wall and caused her to fall.

- He grabbed her by the hair.

- He hit her twice with a closed fist on her forehead while she was holding newly born Ike.

- He hit her while they were in the car and she was holding Ike.

---

[5] At the time of trial, Nate was in prison serving an eight-year sentence for, among other things, his offenses against Amy and for evading arrest, assault against a public servant, and attempted aggravated assault against a public servant.

[6] Despite his guilty pleas, Nate denied all of the alleged assaults against Amy, but he did admit to "shoving and arguing."

- Nate broke into Amy's apartment by breaking a window; he was cut and got blood everywhere. He denied breaking in, saying that Amy had given him a key and that he got cut when he fell into a window because Amy had pushed him.

Amy said that, while pregnant with Ike, she went to the hospital twice to make sure that he was all right because of all the stress that was occurring with Nate; she also thought that Ike was born prematurely because of the stress. She also testified that Lisa has post-traumatic stress disorder from witnessing the domestic violence.

Elizabeth Grissom, a Department investigator, testified that the Department investigated the family in April of 2012 based on allegations of neglectful supervision of Lisa and Ike by Amy and Nate; Grissom also said that there were concerns of domestic violence and that Amy was not being protective of the children. Amy and Nate then left the area, and Nate was hiding from law enforcement. Nate said that they were in the process of going to California so that he could make money to fight his criminal charges and that Amy wanted to go with him and with the children to California so that CPS could not catch her. Amy testified that she did not want to go to California.

Grissom said that after receiving additional reports that Amy and the children had not been seen for a while, and given the past domestic violence, law enforcement made contact with Amy and was able to schedule a meeting with the Department. The children were removed because the children were "at risk of harm;" the Department did not think that Amy could adequately protect the children because she kept returning to Nate after domestic-violence incidents.

In conclusion, considering all the evidence in the light most favorable to the

jury's findings, we hold that a reasonable factfinder could have formed a firm belief or conviction that Amy's parental rights should be terminated under subsections 161.001(1)(D) and 161.001(1)(E). And on her factual-sufficiency complaint, after considering all of the evidence, we hold that a reasonable factfinder could have formed a firm belief or conviction that her rights should be terminated. The evidence is legally and factually sufficient to support the jury's findings that Amy's parental rights should be terminated under subsections 161.001(1)(D) and 161.001(1)(E).

In determining the best interest of a child, a number of factors have been considered, including (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals; (6) the plans for the child by these individuals; (7) the stability of the home; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley*, 544 S.W.2d at 371-72. This list is not exhaustive, but simply indicates factors that have been or could be pertinent. *Id.*

The *Holley* factors focus on the best interest of the child, not the best interest of the parent. *Dupree v. Tex. Dep't Prot. & Reg. Serv's.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ). The goal of establishing a stable permanent home for a child is a compelling state interest. *Id.* at 87. The need for permanence is a paramount consideration for a child's present and future physical and emotional needs. *In re S.H.A.*, 728 S.W.2d 73, 92 (Tex. App.—Dallas 1987, writ ref'd n.r.e.) (en banc).

Evidence of past misconduct or neglect can be used to measure a parent's future conduct. *See Williams v. Williams*, 150 S.W.3d 436, 451 (Tex. App.—Austin 2004, pet. denied); *Ray v. Burns*, 832 S.W.2d 431, 435 (Tex. App.—Waco 1992, no writ) ("Past is often prologue."); *see also A.M.*, 385 S.W.3d at 82-83 (concluding that evidence of mother's history of neglecting and endangering children by exposing them to domestic violence supported trial court's finding that termination was in child's best interest). Evidence of a recent improvement does not absolve a parent of a history of irresponsible choices. *In re T.C.*, No. 10-10-00207-CV, 2010 WL 4983512, at *8 (Tex. App.—Waco Dec. 1, 2010, pet. denied) (mem. op.); *Smith v. Tex. Dep't Prot. & Reg. Servs.*, 160 S.W.3d 673, 681 (Tex. App.—Austin 2005, no pet.)

Ike was four-and-a-half months old when he was removed and was soon placed with foster parents Ian and Kendra. Christi Palmer, the Department caseworker, testified that: Ike is bonded to Ian and Kendra; he calls them "Momma" and "Dad;" the foster parents are very attentive to Ike's needs; and it is in Ike's best interest to remain with the foster parents and for them to adopt him. Kendra testified that Ike has been with them for the past seventeen of his twenty-one months of life and that they are willing to adopt him if termination occurred.

Amy testified many times that she thought that it was in Ike's best interest for her and Nate's parental rights to be terminated, though she preferred that her rights be terminated by voluntary relinquishment. Amy said that it was in Ike's best interest "to be right where he is at, because he has a loving family, he has two parents that are— they're willing to be there for him, to support him, to make sure he gets the educational

needs he needs." She explained that Ike should stay with Ian and Kendra for his "safety" and "for him to actually have a chance at having a good life and being able to nourish and thrive in life." Amy testified that she wanted Ike to be adopted by Ian and Kendra so that he does not have to go through what Lisa went through; he is "loved where he's at, he has a stable environment and he has a normal routine."

Amy said that it was her own decision to want Ike to remain with Ian and Kendra and it was one that "felt like it was in the best interest of [Ike], in my heart." She admitted that it would be hard but "it would be what is best for [Ike], even if it means cutting me out of his life so he can live a happy, healthy life." Amy also said that "it would not be the right thing for" Ike to go through being removed from Ian and Kendra. Amy would like it to be an open adoption and had discussed it with Ian and Kendra, but she understood that an open adoption could not be assured.

Considering all the evidence in relation to the *Holley* factors in the light most favorable to the jury's finding, we hold that a reasonable factfinder could have formed a firm belief or conviction that termination was in the child's best interest. For Amy's factual-sufficiency complaint on best interest, after considering all of the evidence, we hold that a reasonable factfinder could have formed a firm belief or conviction that termination was in the child's best interest. The evidence is legally and factually sufficient to support the jury's best-interest finding. We overrule Amy's two issues.

**Conservatorship:** Based on a jury finding that the Department should be appointed managing conservator of Ike, the trial court appointed the Department as his permanent managing conservator. In his fifth and final issue, Nate asserts that the trial

court abused its discretion in appointing the Department as Ike's permanent managing conservator because there was legally insufficient evidence that returning Ike to Nate would significantly impair his physical health or emotional development.

> In cases where a trial court's termination of the parent-child relationship is reversed, a parent is required to independently challenge a trial court's finding under section 153.131(a) to obtain reversal of the conservatorship appointment. *See In re J.A.J.,* 243 S.W.3d 611, 616-17 (Tex. 2007); *In re A.S.,* 261 S.W.3d 76, 92 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). In this case, however, we have overruled appellant's challenge to the termination, and the trial court's appointment of the Department as sole managing conservator may be considered a "consequence of the termination pursuant to Family Code section 161.207." *In re A.S.,* 261 S.W.3d at 92. Section 161.207, entitled "Appointment of Managing Conservator on Termination," provides: "If the court terminates the parent-child relationship with respect to both parents or to the only living parent, the court shall appoint a suitable, competent adult, the Department of Protective and Regulatory Services, a licensed child-placing agency, or an authorized agency as a managing conservator of the child." TEX. FAMILY CODE ANN. § 161.207(a) (West 2008). Appellant provides no authority for the proposition that she is a "suitable, competent adult" as contemplated by section 161.207(a) or that the presumption in section 153.131(a) applies to a parent whose parental rights have been terminated under Chapter 161. *See In re A.W.B.,* No. 14-11-00926-CV, 2012 WL 1048640, at *7 ((Tex. App.—Houston [14th Dist.] Mar. 27, 2012, no pet.) (mem.op.). Rather, when a trial court terminates the parent-child relationship, the court also "divests the parent and the child of all legal rights and duties with respect to each other." TEX. FAM. CODE ANN. § 161.206 (West 2008); *A.W.B.,* 2012 WL 1048640, at *7. Accordingly, appellant's challenge to the trial court's appointment of the Department as sole managing conservator, rather than appellant, is without merit.

*In re C.L.B.,* No. 10-13-00203-CV, 2014 WL 702798, at *13 (Tex. App.—Waco Feb. 20, 2014, no pet. h.) (mem op.) (quoting *In re J.R.W.,* No. 14-12-00850-CV, 2013 WL 507325, at *12 (Tex. App.—Houston [14th Dist.] Feb. 12, 2013, pet. denied) (mem op.)).

For the same reason, we hold that Nate's complaint that the trial court abused its discretion in appointing the Department as permanent managing conservator, rather than Nate, is without merit. *See id.* Issue five is overruled.

Having overruled all issues, we affirm the trial court's order of termination.

REX D. DAVIS
Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Affirmed
Opinion delivered and filed May 15, 2014
[CV06]