

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-14-00384-CV

IN THE INTEREST OF A.B. AND
K.B., CHILDREN

----------

FROM THE 90TH DISTRICT COURT OF YOUNG COUNTY
TRIAL COURT NO. 32,044

----------

## MEMORANDUM OPINION[1]

----------

Appellant L.B. appeals the termination of his parental rights to his two daughters, A.B. and K.B. In one issue, Appellant contends the trial court erred in denying his motion for mistrial after the jury heard evidence of a criminal history that the Texas Department of Family and Protective Services (the Department)

---

[1]*See* Tex. R. App. P. 47.4.

attributed to Appellant but which it later discovered belonged to someone else with the same name as Appellant. We affirm the judgment of termination.

**Background**

On April 18, 2013, the Department filed its original petition seeking termination of Appellant's parental rights to A.B. and K.B., as well as the parental rights of the children's mother. The Department initially placed the children with their maternal grandmother as part of a child safety placement. The trial court appointed the Department the temporary managing conservator of the children on May 9, 2013. The children's maternal aunt and uncle intervened on October 30, 2013. On April 24, 2014, the trial court extended the dismissal date to November 7, 2014.

A jury trial began on October 24, 2014. The parties resolved the issues regarding the children's mother before trial, so the jury trial focused on whether Appellant's parental rights should be terminated. For each child, the charge asked the jury whether Appellant had knowingly placed or had knowingly allowed the children to remain in conditions or surroundings that had endangered their physical or emotional well-being or had engaged in conduct or knowingly placed the children with persons who had engaged in conduct that had endangered their physical or emotional well-being and, additionally, whether termination was in the children's best interest. Tex. Fam. Code Ann. § 161.001(1)(D), (E), (2) (West 2014). As to both children, the jury answered affirmatively. In the final order, the trial court terminated Appellant's parental rights, named the maternal aunt and

2

uncle as joint managing conservators of the children, and granted the children's mother possessory conservatorship. Appellant brought this appeal.

## Evidence

Appellant was fifty-nine years old and admitted using illegal drugs since he was eighteen—a span of over forty years. The children's mother said that Appellant turned their house into a crack house in 2006. Appellant thought A.B. was born positive for drugs. Appellant admitted using crack two weeks before the Department became involved in this case. Appellant admitted using methamphetamine between five to ten times after the Department became involved.

The children's mother said Appellant hit, choked, kicked, and physically abused her. Once she went to the hospital and suffered a temporary hearing loss. She said the children witnessed the abuse.

Appellant thought he had been arrested once for DWI. He admitted spending three months in jail for a forgery conviction in 2004. He was arrested in January 2012 for possession of cocaine. In July 2013, after the removal of his children and while the case was pending, Appellant was arrested and incarcerated for felony possession of methamphetamine. Appellant spent from July 2013 until June 2014 in jail for that offense. While in jail, he was transferred to another county and convicted of the 2012 possession-of-cocaine offense.

Appellant had not seen the children in well over a year preceding the trial. Appellant said he was living with his eighty-two-year-old mother. He received

3

disability income. Because he was manic depressive and bipolar, he said that throughout his life he had lost jobs for fighting. Appellant's description of the consistency with which he took his medications came across as undisciplined. The home in which the family lived was filthy.

## Appellant's Issue

In one issue, Appellant argues that the trial court erred by denying his motion for mistrial after the Department improperly impeached Appellant with a criminal history that was not his but was that of someone else with the same name as Appellant.

The Department asked to admit Petitioner's Exhibits 8, 9, 10, 11, and 12. There were no objections, and the trial court admitted them. Petitioner's Exhibit 8 was a forgery state jail felony conviction from 2004 for which Appellant admitted serving three months.

When questioned about Petitioner's Exhibit 9, a 2003 DWI with an open container conviction out of Gregg County, Appellant denied committing that offense. The Department requested and obtained permission to publish it to the jury anyway, and the Department published it to the jury. The Department then asked Appellant if he remembered picking up, at the same time in 2003, a conviction for fleeing a police officer as shown in Petitioner's Exhibit 10. Appellant denied committing that offense as well. At this point the Department requested and the trial court granted the Department's request to have the jury leave the courtroom.

4

With the jury absent, Appellant then moved for a mistrial because the criminal history that the Department had questioned Appellant about was not Appellant's but was Appellant's son's criminal history and because the admission of these convictions had tainted the jury. The Department apologized, offered to withdraw the exhibits, and requested the trial court to instruct the jury that the Department had made a mistake and that the convictions were not Appellant's. The Department did not want the trial court to inform the jury that the convictions were Appellant's son's convictions. Appellant had earlier testified before the jury that he had a forty-two-year-old son named L.B. Jr. Appellant argued that because he had denied the offenses, the jury would think Appellant was a liar. In contrast, the children's mother's counsel argued that such an instruction would enhance Appellant's credibility because he correctly denied the convictions were his. The Department published Petitioner's Exhibit 9 to the jury and discussed Petitioner's Exhibit 10 before the jury but did not publish it to the jury; the trial court admitted Petitioner's Exhibits 11 and 12, but the Department neither discussed nor published them to the jury. The trial court denied Appellant's motion for mistrial.

When the jury returned, the trial court gave the following instruction:

THE COURT: You may be seated. Ladies and gentlemen of the jury, you heard a lot of information and cross-examination—or direct examination concerning State's Exhibit 9 and 10 on a driving while intoxicated, or DWI, and a fleeing. I'm here to instruct you now that it's been determined that that was not this [L.B.], so I'm instructing you to disregard that information. And you also heard—as far as any DWI or any fleeing, it was the wrong [L.B.] that's in here, so I'm

5

telling you to disregard anything as to that criminal history concerning that.

You also heard the offer of 11 and 12 of which we haven't even got into yet. That also has been determined, whatever those charges are, are not this [L.B.]. So with that in mind, can everybody do that okay? You can disregard on that?

The first things that were admitted that you do have, that is part of the evidence of this case for your consideration. But anything on 9, 10, DWI and fleeing, that [the Department] asked about, and whatever is contained in 11 and 12, I'm asking that you disregard and not hold that against [L.B.].

When the Department resumed questioning Appellant, the first thing the Department said to him was, "Mr. [B.], I want to apologize. I got you confused with another Mr. [B.] Okay?" Moments later, the Department added, "I'm not going to be asking you about any DWI or any fleeing because that wasn't you. Okay?"

Appellate courts review a trial court's denial of a motion for mistrial under an abuse of discretion standard. *See Lewis v. United Parcel Serv., Inc.*, 175 S.W.3d 811, 815 (Tex. App.—Houston [1st Dist.] 2004, pet. denied); *In re J.A.*, 109 S.W.3d 869, 874 (Tex. App.—Dallas 2003, pet. denied); *Schlafly v. Schlafly*, 33 S.W.3d 863, 868 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). An abuse of discretion on a motion for mistrial occurs when the trial court acts without references to any guiding principle. *Rogers v. Dep't of Family & Protective Servs.*, 175 S.W.3d 370, 375 (Tex. App.—Houston [1st Dist.] 2005, pet. dism'd w.o.j.); *see* Lewis, 175 S.W.3d at 815; *J.A.*, 109 S.W.3d at 874.

6

When a trial court instructs a jury to disregard evidence, the reviewing court may review the evidence to determine whether an instruction to disregard was adequate to cure its admission. *See In re City of Houston*, 418 S.W.3d 388, 397 (Tex. App.—Houston [1st Dist.] 2013, orig. proceeding). A new trial may be justified if the impact of the improper testimony was incurable by the trial court's instructions. *Id.* In the absence of proof to the contrary, we presume the jury followed the court's instruction to disregard evidence. *J.A.*, 109 S.W.3d at 875; *In re K.S.*, 76 S.W.3d 36, 45 (Tex. App.—Amarillo 2002, no pet.); *see In re G.C.F.*, No. 02-06-00282-CV, 2007 WL 1018570, at *9 (Tex. App.—Fort Worth Apr. 5, 2007, no pet.) (mem. op.) ("[W]e have no reason to believe that any harm caused by that questioning was not cured by the trial court's instruction to disregard. Therefore, we cannot conclude that the trial court abused its discretion.").

The trial court's instruction to disregard corroborated Appellant's testimony that the convictions in State's Exhibits 9 and 10 were not his. We fail to see how this harmed Appellant's credibility before the jury. The withdrawal of State's Exhibits 9, 10, 11, and 12 were, if anything, an embarrassment to the Department and undermined its credibility.

Appellant contends the jury would have concluded the convictions were for Appellant's son, whose name was L.B. Jr. Appellant argues this was extremely prejudicial because it called into question Appellant's parenting skills. For the reasons given below, we disagree.

7

The first name in Petitioner's Exhibits 9, 10, 11, and 12 is "Lawrence." Our review of the various exhibits does not show Appellant ever went by the first name "Lawrence." Instead, he went by "Larry." If Appellant's first name was not Lawrence, his son's first name—which was the same as Appellant's—was not Lawrence either. This suggests the convictions were not for either Appellant or his son.

Additionally, Petitioner's Exhibit 9, the only exhibit published to the jury, was for someone with the initials L.L.B. Appellant testified and gave his full name, and the initials for his full name were L.D.B. When giving his son's name, he said, "[L.] D. [B.] Jr." Although both Appellant and the Department asserted to the trial court that the convictions were Appellant's son's convictions, the middle initials of Appellant's son and the person identified in Petitioner's Exhibit 9, as well as Petitioner's Exhibits 10, 11, and 12, are not the same. In short, not only were Petitioner's Exhibits 9, 10, 11, and 12 not Appellant's convictions, they do not appear to be his son's convictions either.[2]

The trial court's instructions did not tie the offenses to Appellant's son. Later, when asked about the withdrawn convictions, Appellant responded, "I don't

---

[2]Within Petitioner's Exhibit 9, L.L.B. is also identified as "[L.B.] Jr." This may explain why both Appellant and the Department asserted the conviction was for Appellant's son. However, the very first page of Petitioner's Exhibit 9 identifies the defendant with a name having the initials L.L.B. Petitioner's Exhibit 10 was for the same person with the initials L.L.B. Within Petitioner's Exhibit 10, L.L.B. is also identified as "[L.B.] Jr." Petitioner's Exhibits 11 and 12 were for the same person (L.L.B.) but included the "Jr."

know who it was, but [the Department] tried to put a whole lot of stuff on me." Appellant's testimony did nothing to tie the convictions to his son and, if anything, appeared to have correctly distanced any link between the convictions and his son. The record does not support Appellant's contention that the jury would have connected the convictions to Appellant's son and concluded Appellant was a poor parent on that basis.

Nothing in the record suggests that the jury disregarded the trial court's instructions. We, therefore, presume the jury followed them. *See J.A.*, 109 S.W.3d at 875. The Department, by apologizing to Appellant before the jury and acknowledging the convictions were not his, underscored the importance of not using those convictions against Appellant. We hold the trial court did not abuse its discretion by denying Appellant's motion for mistrial and overrule Appellant's issue.

## Conclusion

Having overruled Appellant's sole issue, we affirm the trial court's judgment.

/s/ Anne Gardner
ANNE GARDNER
JUSTICE

PANEL: DAUPHINOT, GARDNER, and WALKER, JJ.

DELIVERED: April 30, 2015

9