**The CITY OF JERSEY VILLAGE, Texas, Appellant**

v.

**Denise CAMPBELL, Appellee.**

**No. 01–94–01017–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Jan. 18, 1996.

Rehearing Overruled Feb. 29, 1996.

James S. Ludlum and Anthony G. Brocato, Jr., Austin, for Appellant.

Fritz Barnett and John R. Craddock, Houston, for Appellee.

Before HUTSON–DUNN, O'CONNOR and ANDELL, JJ.

## OPINION

HUTSON–DUNN, Justice.

We must decide whether a trial court can dismiss a juror for bias or prejudice without declaring a mistrial if the parties do not agree to try the case with fewer than 12 jurors. Appellant City of Jersey Village appeals from a judgment in favor of the plaintiff in a suit under a former version of the whistleblower act.[1] Because we hold that the trial court's failure to declare a mistrial was reversible error, we will reverse the underlying judgment and remand the cause for a new trial.

Appellee Denise Campbell is a 20–year career law enforcement officer who was employed by the City of Jersey Village, appellant, for four years. Campbell was the first female detective in the history of the Harris County Sheriff's Department and was later a captain in the Jersey Village Police Department. Campbell's duties as a captain in the Jersey Village Police Department were similar to an assistant chief of police.

Ed Peters, the Jersey Village chief of police, at a supervisors meeting allegedly instructed Sergeant David Smith to write more traffic tickets. Campbell attended this meeting and claims that Peters violated state law by setting a ticket quota for Sergeant Smith.[2]

---

1. Act of May 4, 1993, 73d Leg., R.S., ch. 268, sec. 1, §§ 554.001–.009, 1993 Tex.Gen.Laws 583, 609–11 (former Tex.Gov't Code Ann. §§ 554.001–.009), *amended by* Act of May 25, 1995, 74th Leg., R.S., ch. 721, 1995 Tex.Gen.Laws 3812.

2. Act of May 4, 1989, 71st Leg., R.S., ch. 102, 1989 Tex.Gen.Laws 441 (former Tex.Rev.Civ.Stat. Ann. art. 6701d–25), *amended by* Act of May 21, 1991, 72d Leg., R.S., ch. 657, 1991 Tex.Gen. Laws 2406, *repealed by* Act of May 1, 1995, 74th Leg., R.S., ch. 165, § 24, 1995 Tex.Gen.Laws

Campbell later met with Jersey Village city councilwoman Darcy Mingoia, Sergeant Wayne Cooper, and Sergeant Kirk Graham to discuss problems within the police department, and at that meeting Campbell told Mingoia about the ticket quota and Peters' alleged misuse of his city vehicle, laptop computer, and the department's educational monies. Peters found out about the meeting and allegedly threatened to fire Campbell.

Sergeant Graham later observed evidence, including narcotics, that had been removed from the police evidence vault and that was stacked in the police station hallway and squad room. Graham also observed Peters and another officer walk around the unsecured evidence on their way out of the station, which Graham claims is a violation of the City's rules and regulations. Six pills of narcotics eventually turned up missing after an inventory was performed, and Campbell reported this incident both to the special crimes division of the Harris County District Attorney's Office and to Carol Fox, the city manager. Fox instructed Campbell to send a copy of her report to Peters. Campbell complied, and Peters fired her 28 days later.

Campbell sued the city under a former version of the whistleblower act, and the trial court rendered judgment in her favor based on the jury's verdict for $382,924 in actual damages, $150,000 in attorney's fees, $467,-077 in punitive damages, $61,823 in prejudgment interest, postjudgment interest, and court costs. The City appeals in 31 points of error.[3] Campbell has brought a single crosspoint, claiming that the trial court erred in rendering judgment by failing to calculate prejudgment interest from the date the suit was filed and by failing to award prejudgment interest on future damages.

■ In its first point of error, the City alleges that the trial court erred in rendering judgment because the trial court proceeded to trial with 11 jurors over the City's objection. A major issue in the case was whether Police Chief Peters violated the law by instructing Sergeant Smith to write more traffic tickets. During voir dire examination, the City's attorney questioned the veniremembers as follows:

> Do any of you have a quarrel with a city, be it Jersey Village or anyone else, who enforces the laws of the State of Texas by giving tickets whenever a motorist violates a traffic law? ...
>
> . . . .
>
> Does anyone have a problem with enforcing the law by giving tickets whenever there is a violation of the traffic laws?
>
> . . . .
>
> Does anyone have a problem with the chief telling an officer whom he believes might not be writing tickets, or very many, that you need to enforce the laws? ...
>
> . . . .
>
> Do any of you have any adverse feelings about the City of Jersey Village or have any of you formed any impressions about how you might view Jersey Village in this case or Mrs. Campbell in this case, based on anything that the lawyers have said to you so far?

After the voir dire examination concluded, the parties cast their peremptory strikes, the jury was impanelled and sworn, the trial court released the remaining veniremembers, and the trial court instructed the jury and excused the jurors for the afternoon.

When the trial court excused the jury, the court asked the attorneys to remain. A discussion occurred off the record between the court, the bailiff, and counsel, and then the statement of facts reflects the City requested that it be able to bring back one of the jurors

---

1025, 1870 *and reenacted by* Act of May 1, 1995, 74th Leg., R.S., ch. 165, sec. 1, § 720.002, 1995 Tex.Gen.Laws 1025, 1811 (to be codified at TEX. TRANSP.CODE ANN. § 720.002).

**3.** The City alleges first that the trial court erred in rendering judgment because it proceeded to trial with 11 jurors over the City's objection (point one), because it submitted an erroneous instruction in the charge (point eight), because it erroneously admitted evidence (points nine through 16), because it refused to submit the City's questions, instructions, and definitions (points 17 and 18), and because it erroneously excluded testimony (point 31); and second that the trial court erred in failing to grant a new trial because the evidence was legally and/or factually insufficient (points two through seven) and because the City was entitled to a remittitur (points 19 through 30).

to conduct further voir dire. The juror apparently had indicated to the bailiff that he was a defensive driving instructor and that some of his students had made jokes about the City being a speed trap.[4] The trial court had the juror brought back into court and asked him what he told the bailiff. The juror stated that he was concerned that he would be biased in Campbell's favor.

The City moved that the juror be dismissed for cause and said it was willing to go through a second jury selection. *See* TEX. GOV'T CODE ANN. § 62.105(4) (Vernon Supp. 1996) (disqualification for cause because of bias or prejudice). The court indicated that the juror would be struck for cause and asked the parties if they would agree to proceed with an 11-member jury—Campbell agreed and the City objected. The court requested that counsel brief the issue and recessed the hearing for the day. The following morning before the commencement of opening arguments, the court overruled the City's motion for a mistrial and proceeded to try the case with only 11 jurors.

Because the trial court dismissed a juror pending the trial, we must examine the constitutional and statutory restrictions on trying a case with fewer than 12 jurors. Article V, section 13 of the Texas Constitution provides:

> [P]etit juries in the District Courts shall be composed of twelve men.... In trials of civil cases, and in trials of criminal cases below the grade of felony in the District Courts, nine members of the jury, concurring, may render a verdict.... When, pending the trial of any case, one or more jurors not exceeding three, may die, or be disabled from sitting, the remainder of the jury shall have the power to render the

verdict; provided, that the Legislature may change or modify the rule authorizing less than the whole number of the jury to render a verdict.[5]

The Government Code specifies that in district courts a civil jury "is composed of 12 persons, except that the parties may agree to try a particular case with fewer than 12 jurors." TEX.GOV'T CODE ANN. § 62.201 (Vernon 1988); *cf.* TEX.CODE CRIM.P.ANN. art. 33.01 (Vernon 1989) (jury in criminal cases). The City clearly did not agree to proceed with 11 jurors. We must, therefore, decide whether a bias or prejudiced juror is constitutionally disabled from sitting so the trial court could allow the trial to continue with fewer than 12 jurors.[6]

The supreme court discussed the meaning of the phrase "disabled from sitting" over a century ago:

> Our opinion is that a juror is not "disabled from sitting" within the meaning of the constitution by mere distress of mind. Such distress, caused by information of sickness in his family, calling for his presence at home, might be a sufficient cause for suspending the progress of the trial, if in the judgment of the court the emergency required such a course. But this is not the character of disability which the constitution classes side by side with death. If a juror becomes so sick as to be unable to sit longer, he is plainly disabled from sitting. If by reason of some casualty or otherwise he is physically prostrated, so as to be wholly incapable of sitting as a juror, or *loses his mental powers, so as to become insane or idiotic,* then too he would be disabled from acting as a juror. But, without deeming it proper to attempt to define fully the meaning of the expression used in

---

**4.** The statement of facts does not indicate when the bailiff brought this matter to the court's attention or if the court was aware of the matter before the court swore in the jury and dismissed the remaining veniremembers.

**5.** Texas Rule of Civil Procedure 292 provides that "where as many as three jurors die or be disabled from sitting and there are only nine of the jurors remaining of an original jury of twelve, those remaining may render and return a verdict." *Cf.* TEX.CODE CRIM.P.ANN. art. 36.29(a) (Vernon Supp.1996) ("[W]hen pending the trial of

any felony case, one juror may die or be disabled from sitting at any time before the charge of the court is read to the jury, the remainder of the jury shall have the power to render the verdict....").

**6.** The trial was pending once the parties announced ready and the jury was selected and sworn. *Thomas v. Billingsley,* 173 S.W.2d 199, 200 (Tex.Civ.App.—Dallas 1943, writ ref'd); *Williams v. State,* 631 S.W.2d 955, 957 (Tex. App.—Austin 1982, no pet.).

the constitution, we are satisfied that the causes which disable the juror from sitting, and justify the extreme course of allowing, over a party's objection, a verdict to be rendered by the remainder of the jury, must be of a nature more directly showing his physical or mental incapacity than mere mental distress occasioned by the sickness of others, and the feeling that duty to the sick demanded his presence elsewhere. Extreme cases of the kind, however strongly they may appear to the court to release the juror, do not belong to the class provided for by the constitution or statute.

*Houston & Tex. Cent. Ry. v. Waller,* 56 Tex. 331, 337–38 (1882) (citation omitted and emphasis added) (cited with approval in *McDaniel v. Yarbrough,* 898 S.W.2d 251, 253 (Tex.1995)). The dismissed juror in this appeal was not "physically prostrated," so we must decide whether his bias or prejudice caused him to "lose[ ] his mental powers, so as to become insane or idiotic." *See Waller,* 56 Tex. at 337.

■ *Black's Law Dictionary* defines a "disabled person" as a "[p]erson who lacks legal capacity to act *sui juris* or one who is physically or mentally disabled from acting in his own behalf." BLACK'S LAW DICTIONARY 462 (6th ed. 1990). "Insane" is defined as "disordered in mind to such a degree as to be unable to function safely and competently in ordinary human relations." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1167 (Philip B. Gove ed., 1961). "Idiocy" is defined as "extreme mental deficiency commonly due to incomplete or abnormal development of the brain." *Id.* at 1123. Using the common definitions of these words, a juror's bias or prejudice cannot be equated with a total loss of mental powers such that a trial court would be justified in dismissing a juror and proceeding with a trial without the par-

ties' permission. *Cf. Landrum v. State,* 788 S.W.2d 577, 579 (Tex.Crim.App.1990) (bias for or against applicable law, while appropriate basis to challenge veniremember for cause, does not render sworn juror mentally impaired to satisfy disability requirement of TEX.CODE CRIM.P.ANN. art. 36.29(a) (Vernon Supp.1996)).

■ We hold that a trial court denies a party its constitutional right to trial by jury if the court dismisses a juror who is not "disabled" and overrules the party's timely filed motion for mistrial. *See McDaniel,* 898 S.W.2d at 252–53. We further hold that a trial court's failure to grant a motion for mistrial under such circumstances constitutes an abuse of discretion. *Id.* at 253. Accordingly, we sustain the City's first point of error.[7]

■ We must now decide whether the trial court's failure to grant the City's motion for mistrial constitutes reversible error. *See* TEX.R.APP.P. 81(b)(1). The supreme court has recently decided this issue by reaffirming that the denial of the constitutional right to trial by jury constitutes per se reversible error. *McDaniel,* 898 S.W.2d at 253.

Because we must reverse the judgment of the trial court based on the City's first point of error, we do not reach the City's remaining points of error two through 31 or Campbell's cross-point.[8] The judgment of the trial court is reversed, and the cause is remanded to that court for further proceedings.

---

7. We need not address Campbell's response that the City's voir dire examination was too general to preserve any complaint. Regardless of whether the City preserved error, the trial court could not constitutionally both (1) strike the juror for cause because of bias or prejudice and (2) overrule the City's motion for mistrial.

8. All of the City's remaining points of error are points that if granted would require this Court to

reverse the judgment and remand the cause to the trial court. The City's legal sufficiency points of error if granted would normally require this Court to reverse and render judgment, but the City has waived its right to rendition of judgment by preserving these points in its motion for new trial. *J. Weingarten, Inc. v. Razey,* 426 S.W.2d 538, 540–41 (Tex.1968).