**Affirmed and Memorandum Opinion filed March 10, 2022.**



**In The**

# Fourteenth Court of Appeals

**NO. 14-21-00427-CV**

## IN THE INTEREST OF C.U.D., S.L.D., A/K/A S.D., J.P.J.D., K.K.J.D., A.E.D., II, CHILDREN

**On Appeal from the 308th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2018-37155**

### MEMORANDUM OPINION

Appellant R.J. ("Mother") appeals the trial court's order terminating her parental rights to her children C.U.D., S.L.D. A/K/A S.D., J.P.J.D., K.K.J.D., and A.E.D., II.[1] *See* Tex. Fam. Code Ann. § 161.001(b)(1), (b)(2). In three issues, Mother argues the trial court erred by: (1) denying her motion for mistrial, (2) admitting into evidence a police report containing inadmissible hearsay, and (3) entering an order terminating Mother's parental rights based on Family Code § 161.001(b)(1)(O). *See id.* § 161.001(b)(1)(O). We affirm.

---

[1] C.U.D. was born in 2013, S.L.D. was born in 2014, twins K.K.J.D. and J.P.J.D. were born in 2016, and A.E.D., II was born in 2017.

# I. Background[2]

On August 13, 2019, the Department of Family and Protective Services ("the Department") filed its first amended petition for conservatorship and termination of the parent-child relationship between Mother and Father and their five children: C.U.D., S.L.D. A/K/A S.D., J.P.J.D., K.K.J.D., and A.E.D., II. On June 7, 2021, the Department filed its third amended petition, stating that Mother's parental rights should be terminated under Chapter 161 of the Family Code because Mother committed one or more of the following acts or omissions: (1) knowingly placed or allowed the children to remain in conditions or surroundings that endanger their physical or emotional well-being; (2) engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the children's physical or emotional well-being; (3) executed before or after the lawsuit was filed an affidavit of relinquishment of parental rights as provided by Family Code Chapter 161; (4) was convicted or placed on community supervision for the death or serious injury of a child under specified sections of the Penal Code; (5) constructively abandoned the children who had been in permanent or temporary managing conservatorship of the Department for at least six months, and the Department made reasonable efforts to return the child to the parent, the parent has not regularly visited or maintained significant contact with the child, and the parent has demonstrated an inability to provide the child with a safe environment; (6) failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the children who have been in permanent or temporary managing conservatorship of the Department for

---

[2] The facts of this case, as well as its procedural history, are well known to the parties; therefore, we will discuss the facts of the case only to the extent they are relevant to the issues on appeal. *See* Tex. R. App. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal.").

at least nine months as a result of the children's removal from the parent under Chapter 262 for the abuse or neglect of the child; and (7) used a controlled substance, as defined in Health and Safety Code Chapter 481, in a manner that endangered the children, and the parent failed to complete a court-ordered abuse treatment program or continued to use a controlled substance after the treatment program. *See* Tex. Fam. Code Ann. § 161.001(b)(1) (D), (E), (K), (L), (N), (O), (P).

On June 22, 2021, trial began on the Department's petition for termination of Mother and Father's parental rights. The jury heard testimony from Mother; Deputies Jonathan Ajayi and Christopher Cano of the Harris County Sheriff's Office; the Department's case worker assigned to the Department's case, Amanda Bermudez; the Department's case worker for a different case concerning a child not subject to the underlying lawsuit, Jessica Espaillat; two psychologists, Dr. Charles Cleveland and Dr. Ebony Butler; the senior pastor of a church and the operator of a shelter connected with the church, where Mother and Father attempted to obtain housing, Dr. Edward Buford; and the children's guardian ad litem, Claudia Canales.

At the end of the presentation of evidence at trial, the Department abandoned its requests for termination of Mother's parental rights based on its allegations that Mother: (1) executed before or after the lawsuit was filed an affidavit of relinquishment of parental rights as provided by Family Code Chapter 161, and (2) was convicted or placed on community supervision for the death or serious injury of a child under certain sections of the Penal Code. *See id.* § 161.001(b)(1)(K), (L). Mother moved for a directed verdict as to all other predicate grounds for termination alleged by the Department. The trial court denied Mother's requests. The trial court submitted the case to the jury with instructions as to four of the

3

predicate statutory grounds relied on by the Department.[3] *See id.* § 161.001(b)(1) (D), (E), (N), (O).

The jury found that termination of Mother's parental rights was proper based on all four grounds submitted and that termination was in the best interest of the children. *See id.* § 161.001(b)(1) (D), (E), (N), (O). On September 14, 2021, the trial court signed an order incorporating the jury's findings and terminating Mother's parental rights to all five children pursuant to Family Code § 161.001(b)(1)(D), (E), (K), (N), and (O).[4] *See id.* § 161.001(b)(1). Mother timely appealed.

## II.    MOTION FOR MISTRIAL

In her first issue, Mother argues the trial court erred when it denied Father's motion for mistrial.

### A. STANDARD OF REVIEW

We review the trial court's ruling on a motion for mistrial for an abuse of discretion. *Schlafly v. Schlafly¸* 33 S.W.3d 863, 868 (Tex. App.—Houston [14th Dist.] 2000, pet. denied); *City of Jersey Village v. Campbell*, 920 S.W.2d 694, 698 (Tex. App.—Houston [1st Dist.] 1996, writ denied); *see Tex. Turnpike Auth. v. McCraw*, 458 S.W.2d 911, 913 (Tex. 1970). A trial court abuses its discretion when it acts arbitrarily or unreasonably or without reference to guiding rules or

---

[3] The trial court did not submit to the jury the question of whether termination was proper based on Mother's alleged used of a controlled substance, as defined in Health and Safety Code Chapter 481, in a manner that endangered the child, and Mother's alleged failure to complete a court-ordered abuse treatment program or continued to abuse a controlled substance after the treatment program. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(P). At the charge conference, Mother's counsel argued that this predicate ground for termination "was not pled as to mother," and the trial court agreed. However, we note that the Department's live pleading contained this allegation.

[4] The trial court's order terminated Father's parental rights based on § 161.001(b)(1)(D), (E), (N), (O), and (P), consistent with the jury's findings. *See id.* § 161.001(b)(1).

principles. *Bowie Mem. Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002).

## B. ANALYSIS

During Mother's testimony, the following exchange occurred:

| | |
|---|---|
| [The Department]: | Okay. And were you aware if a CPS investigator attempted to come and see you and [Father] at the Extended Stay in Webster? |
| [Mother]: | Nobody tried to come see us. |
| [The Department]: | Okay. And are you aware of whether or not [Father] made a statement to the investigative caseworker, "That she could come -- " |
| [Mother's counsel]: | Objection. |
| [The Department]: | If I can finish my statement, please. |
| [Mother's counsel]: | It's hearsay on hearsay, Judge. |
| [Trial Court]: | She needs to finish her question and then you can certainly object before the witness responds. |
| [The Department]: | Are you aware of whether or not [Father] made a statement to the investigative caseworker, "That she could come to that motel room in Webster, Texas, but if she did, he would shoot her in the face"? |
| [Father's counsel]: | Your Honor, I'm going to object to hearsay. |
| [Trial Court]: | Sustained. |
| [Father's counsel]: | And I'd ask that the jury be asked to disregard that question. |
| [Trial Court]: | Okay. Being that that objection was sustained, the jurors are specifically instructed to disregard and not carry any weight in to the asked question. |
| [Father's counsel]: | Your Honor, at this time I'd move for a mistrial. |

5

[Trial Court]:          Okay. The jurors, we're going to excuse them and we will have argument as to your request for a mistrial. Go ahead. All rise.

(OUT OF THE PRESENCE OF THE JURY)

[Trial Court]:          Now that the jurors are no longer in the presence of the court, [Father's counsel], make your argument for your request or motion for a mistrial.

[Father's counsel]:     Your Honor, I would ask for a mistrial at this point because the question in and of itself the jury hearing it, it's highly prejudicial. It's a bell that can't be, you can't unring that bell, despite the fact that you're going to give -- you gave them the instruction or will give them the instruction to disregard it. I think also asking for it to be struck, the problem is you've got 12 people who they've heard it. The damage is done. And so, your Honor, for this point, especially as to my client, I think that this Court has got to grant a mistrial.

[Trial Court]:          Any response?

[The Department]:       My response would be that, my argument, number one, as far as the hearsay, it's definitely a statement against interest as far as [Father] is concerned, so that would be my argument as to whether or not it's even hearsay; that's the first thing. The second thing is, I don't believe that based on the Court's instructions that they'll have any issue with determining that that's not a piece of information or evidence that they're supposed to weigh in order to make a decision, in order to make a decision in this case, so I would ask that the mistrial be, the request for mistrial be denied.

[Trial Court]:          Are there any additional statements or responses that the additional Attorney Ad

6

|                      |                                                                                                                                                                                                                                                                                                                                                                                                                                                             |
|----------------------|-----|
|                      | Litems would like to make on the record? I'll begin by asking [Mother's counsel] first. |
| [Mother's counsel]:  | I'm sorry, I don't understand any additional statements about this. |
| [Trial Court]:       | Yeah. |
| [Mother's counsel]:  | Well, your Honor, for one thing, I think that there are going to be other instances when we think that the Petitioner is back dooring information, just defamatory information that is not relevant to this proceeding that -- |
| [Trial Court]:       | That's not relevant to the request for a mistrial. |
| [Mother's counsel]:  | I understand that. But I'm saying there are going to be other instances, and I just want you to understand that this might be a recurring issue. The problem is, this is defamatory against my client allowing -- or allowing the jury to hear this, an allegation that the father of her children has threatened, has allegedly threatened to shoot another person is defamatory against her [sic]. And asking her, are you aware he said this, it's not even established yet. They're just trying to back door this information to inflame the minds of the jury, and I don't think that bell can be unrung. |
| [Trial Court]:       | Anything else, [children's ad litem]? |
| [Children's ad litem]: | Your Honor, if I may, I don't believe that the statement was inflammatory, and certainly they can call a rebuttal witness to back up what they've said. It's not like it's something that was never said. I don't think it rises to the level of a mistrial. |
| . . . .              | |
| [Trial Court]:       | After break and I believe the question before the Court and the motion, I guess better |

stated, by [Father's counsel] on behalf of her client as to the request for a mistrial, the Court is denying that request. The Court believes that under 403 as stated by [Father's counsel], that I do not believe and the Court specifically finds that the statement would substantially outweigh by a danger of one or more of the following, of possibly being unfairly prejudicial or possibly confusing an issue or misleading the jury is not what would happen and, therefore, would not be cause to grant a mistrial at this time, and, specifically, based upon the question that was asked by the State's attorney.

Mother argues that the trial court erred when it denied Father's motion for mistrial. However, "in trials involving multiple defendants, a party must make its own objection to the evidence if it wishes to preserve error for appeal." *Owens-Corning Fiberglas Corp. v. Malone*, 916 S.W.2d 551, 556 (Tex. App.—Houston [1st Dist.] 1996), *aff'd*, 972 S.W.2d 35 (Tex. 1998); *Bohls v. Oakes*, 75 S.W.3d 473, 478 (Tex. App.—San Antonio 2002, pet. denied); *Beutel v. Dall. Cnty. Flood Control Dist., No. 1*, 916 S.W.3d 685, 694 (Tex. App.—Waco 1996, writ denied); *Celotex Corp. v. Tate*, 797 S.W.3d 197, 201 (Tex. App.—Corpus Christi–Edinburg 1990, writ dism'd); *Howard v. Phillips*, 728 S.W.2d 448, 451 (Tex. App.—Fort Worth 1987, no writ); *see* Tex. R. App. P. 33.1(a); *Wolfe v. E. Tex. Seed Co.*, 583 S.W.2d 481, 482 (Tex. App.—Houston [1st Dist.] 1979, writ dism'd) ("[A] party must make his own objection to the evidence, or an exception to the ruling of the court regarding the objection, if he wishes to preserve any error for appeal."). Here, Mother did not make a motion for mistrial, nor does the record reveal that the trial court granted a request by Mother or Father to have a single objection preserve error for both parties. *See Owens-Corning Fiberglas Corp.*, 916 S.W.2d at 556–57

(concluding that appellant could rely on another defendant's objection when the trial court "required that an objection made by one defendant would be made on behalf of all defendants"). Thus, we conclude that Mother has failed to preserve this issue for our review. *See* Tex. R. App. P. 33.1(a); *Owens-Corning Fiberglas Corp.*, 916 S.W.2d at 556; *see also Kaminetzky v. Richardson*, No. 01-00-00575-CV, 2003 WL 21470396, at *1 (Tex. App.—Houston [1st Dist.] June 26, 2003, pet. denied) (mem. op.) ("IPC cannot rely on the motions and objections made by other defendants to preserve error . . . .").

We overrule Mother's first issue.

### III. HEARSAY

In her second issue, Mother argues the trial court abused its discretion when it "admitted inadmissible hearsay through a Houston Police Department offense report riddled with out-of-court statements asserted for the truth of the matter that were highly prejudicial . . . ."

### A. STANDARD OF REVIEW

We review a trial court's admission of evidence under the abuse-of-discretion standard. *In re J.P.B.*, 180 S.W.3d 570, 575 (Tex. 2005) (per curiam). A trial court abuses its discretion when it acts arbitrarily or unreasonably or without reference to guiding rules or principles. *Bowie Mem. Hosp.*, 79 S.W.3d at 52.

We will not reverse a trial court's judgment based on the erroneous admission of evidence unless we conclude that the error probably caused the rendition of an improper judgment. Tex. R. App. P. 44.1(a)(1); *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 136 (Tex. 2012); *Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex. 2001). In determining whether the erroneous admission of evidence was harmful, we review the entire record. *Interstate*

9

*Northborough*, 66 S.W.3d at 220. "Typically, a successful challenge to a trial court's evidentiary rulings requires the complaining party to demonstrate that the judgment turns on the particular evidence excluded or admitted." *Id.* The erroneous admission of evidence that is cumulative of other properly admitted evidence is harmless. *Nissan Motor Co. v. Armstrong*, 145 S.W.3d 131, 144 (Tex. 2004).

## B. APPLICABLE LAW

Hearsay is an out-of-court statement that a party offers into evidence to prove the truth of the matter asserted in the statement. Tex. R. Evid. 801(d). Generally, hearsay is not admissible unless provided for by the Texas Rules of Evidence, a statute, or other rule. Tex. R. Evid. 802.

The rule against hearsay does not exclude a record or statement of a public office if:

(A) it sets out:

(i) the office's activities;

(ii) a matter observed while under a legal duty to report, but not including, in a criminal a criminal case, a matter observed by law-enforcement personnel; or

(iii) in a civil case . . . factual findings from a legally authorized investigation; and

(B) the opponent fails to demonstrate that the source of the information or other circumstances indicate a lack of trustworthiness.

Tex. R. Evid. 803(8). Hearsay within hearsay is not admissible unless each part of the combined statements conforms with an exception to the general rule excluding hearsay. *Benson v. Chalk*, 536 S.W.3d 886, 895 (Tex. App.—Houston [1st Dist.] 2017, pet. denied); *see* Tex. R. Evid. 805; *Knox v. Taylor*, 992 S.W.2d 40, 64 (Tex. App.—Houston [14th Dist.] 1999, no pet.). "When a police report contains a hearsay statement, the statement must fall under some hearsay exception of its own

because neither the public records and reports exception, nor the records of regularly conducted activities exception, protects hearsay within hearsay." *Benson*, 536 S.W.3d at 895.

## C. ANALYSIS

Here, Mother argues the trial court abused its discretion when it admitted exhibit thirteen, which contains two police reports regarding the February 10, 2020 incident. One of the reports is written by Officer "Aguilar, R" and a supplemental report is written by Officer "Pham, T T[.]" Officer Aguilar's police report covers events that occurred the day Mother and Father visited the children while they were in the Department's care.

The relevant portions of Officer Aguilar's report provide:

I, Officer R. Aguilar was riding 22834E and was dispatched to a child custody situation at 3 Northpoint Dr on Monday 02-10-2020 at 1611 Hrs.

I arrived at 1628 Hrs and made contact with the compl[ainant] and the suspects, the suspects provided fictitious court documents demanding that police remove the children from CPS. The children were left in the custody of CPS and the parents/suspects were provided a case number.

Officers with BWC:

Sgt. A. Anderson Pr# 140497

Officer Rangel Pr# 161125

Officer Aquino Pr# 160122

COMPLAINANT STATEMENTS:

Bermudez, Amanda

CPS Specialist

. . . .

She stated that she worked for CPS and that she has temporary custody of the children that was granted by Judge Gloria Lopez out of

11

Court 308. With that court order she (CPS) has custody of the children and wanted police to assist in her in taking the additional 2 children from the suspects. She then stated that the suspects did have a court [sic] to have the children returned to them on Oct 3, 2019 but when they went to drop off the children. The address the suspects provided was fake and could not release the children to them if they were still homeless and did not have a [sic] actual place of residence.

. . . .

Upon arrival to the scene I made contact with the suspects #1 and #2, I then gathered their statement to why they called. The suspect #2 then provide a ripped single document regarding her case and how it was a official court document signed by the judge (paper did not have any official stamp by the judge). I then spoke to the compl[ainant] and gathered her side of the incident , I then advised the suspects that the children were not going to be released. The suspects then demanded a captain to make the scene, I advised them that he would not make the scene. I then advised them that I was going to get a Sgt to make the scene.

Moments later Sgt. Anderson made the scene and further explained to the suspects that CPS was going to maintain custody of the children, and that he needed to go to court to get another court order. After several attempts of providing his legal documents, calling 911 and requesting a chief, threatening police with being arrested by the Feds for hindering justice suspect #1 made an outcry that his daughter was being sexually assaulted. Because of this the suspect #1 did not feel comfortable in leaving the child in CPS custody, but did not provide any further details to the incident. Based on the entire interaction with the suspects regarding the custody their children, and how they exhausted hoe [sic] avenues of trying to have police assist them in getting their kids back. I could not find his out cry credible at this time, based on the totally of the circumstances and how after 45-50 min of arguing with police regarding the courts & and child custody. The suspect #1 then made the outcry in order to attempt to maintain custody of the child. After several more moments of explaining to the suspects that the children were going to stay with CPS, the suspects finally left the lobby of the CPS office.

Office Pham's report, dated February 11, 2020, provides:

On this date, I, Detective TT Pham , payroll #103881 reviewed this

12

case for follow up. According to the report, the officers settled the case at scene. There is no Interference with Child Custody had occurred at this time and the suspects were advised to go back to court and update the order. I closed this case from MPU's case management. Case closed.

When exhibit thirteen was offered for admission, the following exchange occurred:

| | |
|---|---|
| [Trial Court]: | Okay. And this is the State's Exhibit 13; correct? |
| [The Department]: | Yes, Judge. |
| [Trial Court]: | And I'm assuming there's objections, and if so, what are those? |
| [Father's counsel]: | Your Honor, my objection to No. 13 coming in is that it is simply a, I guess it's an offense report. It's not an actual charge. I would argue that under 401, 403, it's prejudicial. In addition to that, your Honor, it has hearsay within it. It's written by an Officer Aguilar, who is not present to testify. Under 803 in addition to that, there is statements made by Amanda Bermudez, excuse me, on Page 5 at the bottom where she's listed as a complainant. There is, there is hearsay listed on Page 6 statements made a Sergeant Anderson, which would be the second paragraph under "Officer's Actions," and there is also a statement made a T. Pham on the last page. That's on Page 1 of 1, but it's the last page, Page 9 for the purpose of the exhibit. And so, your Honor, for those reasons, I would ask that it be excluded. |
| [Trial Court]: | All right. Thank you. |
| [Mother's counsel]: | Judge, I would also like to add that there has been extensive testimony about that incident, and so -- and that the police were |

| | |
|---|---|
| | called out and this is needlessly cumulative of evidence already before the Court and the jury. |
| [Trial Court]: | Thank you. Any response? |
| [The Department]: | The only response would be that, the document is a certified document and, although, there has been testimony from at least two witnesses about the incident, there are clearer differences in perspective about what occurred; and so I would ask that the document be entered specifically for the purpose of rebuttal. |
| [Mother's counsel]: | Judge. |
| [Trial Court]: | Yes. |
| [Mother's counsel]: | The problem with allowing hearsay in, if it's going to be allowed in to prove the matters asserted therein, that is such a violation of the Rules of Evidence. They certainly had subpoena power. They could subpoena the officers. They could subpoena these people if they want to have additional proof, reliable admissible proof before the jury. But allowing this in for any other purpose than to show that an offense report was made is in violation of 803. |
| [Trial Court]: | I believe there is -- 803 has exceptions and this is a public record, so there is an exception so I'm not worried about Officer or Deputy Aguilar. |
| . . . . | |
| [Trial Court]: | Okay. As to Officer Aguilar, I believe that any statements made by this deputy or officer in the report would fall under the exception under 803. As to Amanda Bermudez, I don't believe that would apply here. I am concerned and I hear the objection in regards to any statements within |

14

|  |  |
|---|---|
|  | the report as to T. Pham, so I would like a response to the hearsay objections, specifically on Page 9 of the exhibit that relate to T. Pham's statements or quotes and that's being specifically hearsay. |
| [The Department]: | As far as T. Pham is concerned, that's also, that person is also listed as a detective, so I believe it would fall under the same purview the Court just listed as far as the same with Officer Aguilar, so I believe that it would meet the exceptions previously stated by the Court, Judge. |
| [Trial Court]: | As to the objections of cumulative, that's overruled. As to hearsay, that's overruled. As to 401 and 403, that's overruled. |
| [Father's counsel]: | Thank you, your Honor. |
| [Trial Court]: | 13 is admitted. |

As noted above, a party may not rely on another defendant's objection to preserve error for appeal. *See Owens-Corning Fiberglas Corp.*, 916 S.W.2d at 556. Here, Father objected to exhibit thirteen on the basis of hearsay and identified the statements in the exhibit he was challenging. Mother, however, did not object on the basis of hearsay, although she did articulate the word "hearsay" to the trial court during the discussion pertaining to exhibit thirteen's admissibility. Assuming, without deciding, that Mother objected to exhibit thirteen on the basis of hearsay, she failed to identify the statements that she was challenging as hearsay. A blanket hearsay objection that does not identify the statements being challenged in a document preserves nothing for our review. *See In re L.M.*, 572 S.W.2d 823, 832–33 (Tex. App.—Houston [14th Dist.] 2019, no pet.) ("A hearsay objection that does not identify which parts of a document contain hearsay is not sufficiently specific to preserve error with respect to those parts."). Therefore, this issue has been waived.

15

Nevertheless, even if Mother challenged the same statements in exhibit thirteen that Father identified for the trial court, we conclude that the trial court did not abuse its discretion by admitting exhibit thirteen into the record. Officers Pham and Aguilar's statements in the police report are admissible under the exception to the rule against hearsay provided in Texas Rule of Evidence 803(8) because the reports are records of a public office (the Houston Police Department) setting out the office's activities, factual findings, and matters observed while under a legal duty to report. *See* Tex. R. Evid. 803(8)(A); *see also Tex. Dep't of Pub. Safety v. Caruana*, 363 S.W.3d 558, 564 (Tex. 2012) ("Law enforcement investigation reports are commonly admitted in civil cases . . . ."); *McRae v. Echols*, 8 S.W.3d 797, 799–800 (Tex. App.—Waco 2000, pet. denied) (concluding police officer's report was admissible under 803(8)). Furthermore, Mother did not argue at the trial court that the source of the report or other circumstances indicated a lack of trustworthiness. *See* Tex. R. App. P. 33.1(a); Tex. R. Evid. 803(8)(B).

As to the statements in the report by Bermudez and Sergeant Anderson[5] that were challenged in the trial court, Bermudez testified at trial without objection regarding the same information. Bermudez is the Department's case worder assigned to the underlying case. According to Bermudez, on the day of the visitation in question, Mother and Father "called the cops to come to the CPS office, because [Father] was alleging that CPS did not follow a court order and that this case is fraud and that [CPS] kidnapped his children." When the visitation was ended, Mother and Father seized S.L.D. and J.P.J.D., prevented them from going behind the locked door with Bermudez, took the children to the lobby, and Father

---

[5] We note that the only hearsay statement by Sergeant Anderson in the police report is the first sentence of the paragraph identified by Father to the trial court, which provides "Moments later Sgt. Anderson made the scene and further explained to the suspects that CPS was going to maintain custody of the children, and that he needed to go to court to get another court order." The remainder of the paragraph is Officer Aguilar's narrative.

shielded the children from Bermudez. Father was aggressive and threatening and used obscenities, and Mother "was also very loud and yelling and cursing and threatening to sue and to call the cops and have everyone arrested." When law enforcement arrived, Mother and Father told the officers "[t]hat CPS had kidnapped their children."

Bermudez testified that Mother and Father presented the police officer with an outdated court order in which the trial court ordered the Department to return the children home. Mother and Father, however, failed to mention to the officer that the trial court held another hearing and a subsequent order was entered. Bermudez "had to find the court order where CPS granted [temporary managing conservatorship] of the children to prove to the cops that CPS did, in fact, have Temporary Managing Conservatorship of the children." Bermudez presented the police with the order naming the Department as the children's temporary managing conservator, and then Bermudez "was able to take the children and return them home."

Because the same evidence complained of in exhibit thirteen attributed to the statements of Bermudez and Sergeant Anderson was also admitted during Bermudez's testimony without objection, any error in the admission of Bermudez and Sergeant Anderson's statements in exhibit thirteen is harmless. *See Nissan Motor Co.*, 145 S.W.3d at 144. Furthermore, to the extent Mother complains on appeal of statements in exhibit thirteen that were not brought to the court's attention, we conclude that those complaints are waived because they were not raised in the trial court. *See* Tex. R. App. 33.1(a).

We overrule Mother's second issue.

17

## IV.  TEXAS FAMILY CODE § 161.001(b)(1)

In her third issue, Mother argues "[t]he trial court improperly entered an order to terminate the parental rights of [Mother] in this case pursuant to" § 161.001(b)(1)(O) "because the children in this case were not *removed* for 'abuse or neglect' . . . ."  *See* Tex. Fam. Code Ann. § 161.001(b)(1)(O). Mother argues that "the jury heard that [Mother] struggled with housing and finances, but did not heard [sic] evidence that would support any notion other than that she loved and cared for her children the best she could." We construe Mother's argument as a challenge to the legal sufficiency underlying the jury's finding that termination was proper under § 161.001(b)(1)(O).[6]

### A. APPLICABLE LAW

"Texas Family Code Section 161.001(b) allows for involuntary termination of parental rights if a court finds by clear and convincing evidence both that a parent engaged in one or more enumerated predicate grounds for termination and that termination is in the best interest of the child." *In re M.P.*, No. 21-0360, __ S.W.3d __, __, 2022 WL 333363, *1 (Tex. Feb. 4, 2022) (per curiam) (citing Tex. Fam. Code Ann. § 161.001(b)(1)(A)–(U), (b)(2)). Thus, a single predicate finding under § 161.001(b)(1) of the Family Code is sufficient to support a judgment of termination when there is also a finding that termination is in the child's best interest. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). If multiple predicate grounds are found, then we may affirm on any one ground because only one is necessary for termination of parental rights. *See In re T.G.R.-M.*, 404 S.W.3d 7, 13 (Tex. App.—Houston [1st Dist.] 2013, no pet.). However,

because prior termination for endangerment is a predicate ground for a

---

[6] Mother concedes in her brief that she did not file a motion for new trial, and thus, failed to preserve a challenge to the factual sufficiency of the evidence. *See* Tex. R. Civ. P. 324(b)(2).

future termination, due process and due course of law require that [a] court of appeals review the legal and factual sufficiency of the evidence supporting a trial court's order of termination under Subsections 161.001(b)(1)(D) and (E) *when challenged on appeal*.

*In re M.P.*, __ S.W.3d at __, 2022 WL 333363, at *3 (emphasis added); *see In re Z.M.M.*, 577 S.W.3d 541, 543 (Tex. 2019) (per curiam); *In re N.G.*, 577 S.W.3d 230, 237 (Tex. 2019) (per curiam).

Under § 161.001(b)(1)(O), the trial court may order termination of the parent-child relationship if there is clear and convincing evidence that the parent has:

failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 *for the abuse or neglect of the child*[.]

Tex. Fam. Code Ann. § 161.001(b)(1)(O) (emphasis added); *see id.* § 262.001(a) ("A governmental entity with an interest in the child may file a suit affecting the parent-child relationship requesting an order or take possession of a child without a court order as provided by this chapter."); *id.* § 262.104 (providing that the Department may take possession of a child in an emergency without a court order); *see also In re E.C.R.*, 402 S.W.3d 239, 248 (Tex. 2013) ("[W]hile subsection O requires removal under Chapter 262 for abuse or neglect, those words are used broadly."); *In re A.A.A.*, 265 S.W.3d 507, 516 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (concluding that child in care of a shelter at the time of removal was removed from the parent under chapter 262 for abuse or neglect); *In re A.P.*, No. 13-19-00342-CV, 2019 WL 6315429, at *6–7 (Tex. App.—Corpus Christi Nov. 26, 2019, no pet.) ("[c]hildren are removed from their parents under Chapter 262 for the abuse or neglect of a child [even] where the children may have been

physically in the care of a relative, a medical or social services institution, or the Department."); *In re J.H.*, No. 09-14-00171-CV, 2015 WL 5093400, at * 4–5 (Tex. App.—Beaumont Aug. 31, 2015, no pet.) (mem. op.) (rejecting mother's argument that child was not removed from her care when child was removed from relatives appointed as managing conservators because the child "was originally removed from Mother's care pursuant to Chapter 262").

## B. ANALYSIS

Mother argues that the evidence is legally insufficient to support the jury's finding of predicate grounds for termination under part (O) of Family Code § 161.001(b)(1). *See* Tex. Fam. Code Ann. § 161.001(b)(1)(O). However, she does not dispute that the evidence was sufficient to support the jury's finding of grounds for termination under part (D), (E), and (N) of the statute. Furthermore, Mother does not argue that termination of her parental rights was not in the children's best interest.

To succeed on appeal from a termination decree, an appellant must establish that the findings on all of the termination grounds found by the factfinder are unsupported by the evidence. *In re A.V.*, 113 S.W.3d at 362 (holding that father's failure to challenge sufficiency of evidence to support finding under one subsection of § 161.001(1) made it unnecessary to address father's challenges to other grounds for termination); *In re G.S.*, No. 14-14-00477-CV, 2014 WL 4699480, at *5 (Tex. App.—Houston [14th Dist.] Sept. 23, 2014, no pet.) (mem. op.); *see In re B.K.D.*, 131 S.W.3d 10, 16 (Tex. App.—Fort Worth 2003, pet. denied) (holding that because the jury found four grounds for termination under § 161.001(1) and the father challenged only three of those grounds, appellate court was not required to address his argument that the evidence was insufficient on the three challenged grounds). Here, the jury found that Mother's parental rights should be terminated

on four grounds under § 161.001(b)(1). On appeal, Mother challenges only one of those grounds. Because Mother does not challenge three other grounds supportive of the judgment, we need not address her argument that the evidence is insufficient to support the jury's finding on the one ground she challenges on appeal. Accordingly, we overrule Mother's third issue.

## V. CONCLUSION

Having overruled all of Mother's issues on appeal, we affirm the trial court's order.

/s/ Margaret "Meg" Poissant
   Justice

Panel consists of Justices Wise, Jewell, and Poissant.